RIDLEY v. McPHERSON.

(*Nashville.* December 11, 1897.)

DEED. *Giving remainder to "issue" of life tenant.*

Under a deed vesting the remainder interest in lands in the "issue" of the life tenant "living at her death," the grandchildren take concurrently with the children of the life tenant, and all take *per capita* in the absence of other controlling provision in the deed.

Cases cited and approved: 19 L. R. A., 472; 34 L. R. A., 500; 32 Am. St. Rep., 731.

---

FROM WILLIAMSON.

---

Appeal from the Chancery Court of Williamson County. H. H. COOK, Ch.

J. H. HENDERSON · and C. R. BERRY for Ridley.

H. P. FOWLKES for McPherson.

WILKES, J. This is a bill to construe a certain deed, made May 27, 1860, by John Starnes to Samuel W. Starnes and John M. McPherson, trustees, and to have the interests of complainants in the lands adjudicated and fixed, and the land partitioned.

The deed gives certain lands to the grantees, to hold in trust for the grantor's daughter, Mary E.

McPherson, for her separate use during life, and
provides that, at her death, "the lands shall be
conveyed by the trustees to the issue of said Mary
E. living at her death, and, in default of any such
issue living at the death of said Mary E., then,
upon this further trust, that said lands be forthwith
conveyed to the grantor, if living, and if dead, to
his right heirs at that time." The life tenant,
Mary E. McPherson, has died. She left surviving her
one daughter, Rebecca Ridley, and her eight children;
also the grandchildren, John and Samuel McPherson,
who are the children of a son of the life tenant, who
died before his mother.

Mrs. Ridley and her eight children are the com-
plainants in this cause, and the McPherson children
are defendants. The question is, who answers the
description, "issue of Mary E.," the life tenant, liv-
ing at her death, and in what way and proportion
do they take? The Chancellor was of opinion that
Mrs. Ridley took one-half of the real estate, and
the two McPherson children jointly took the other
half. The Court of Chancery Appeals was of the
same opinion, and so decreed, and complainants and
defendants have all appealed.

It is insisted for complainant: First, that Mrs.
Ridley, being the only living child of Mary E.
McPherson, the life tenant, must take the whole
estate; second, if mistaken in this, then the property
must pass to all her descendants, *per capita*, equally,
in which event Mrs. Ridley will take, jointly with

her eight children, $\frac{9}{11}$ of the property and the McPherson children will take $\frac{2}{11}$.

For defendant it is contended that Mrs. Ridley and the two McPherson children must share the property equally, each taking an interest of one-third, and that the children of Mrs. Ridley take nothing. It is conceded that the precise question involved has not been determined in Tennessee, and that in other jurisdictions the decisions are numerous, and in some conflict.

The various views held by different Courts may be found commented upon in 2 Redfield on Wills, 355 to 379, inclusive, and notes, and 11 Am. & Eng. Enc. L., 869–879 (note), and need not be further set out here. The difficulty lies in defining the word "issue," and in determining the probable meaning which the grantor intended to give it; and the confusion arises from the effort, on the one hand, to carry out a supposed intention of the testator, and, on the other, to give to the word its strict legal signification. Mr. Bouvier says the word "issue" includes all persons who have descended from a common ancestor. It has also been said that, unless controlled by the context, it means lineal descendants, without regard to degree of proximity or remoteness from the original stock or source. 11 Am. & Eng. Enc. L. (1st ed.), 899, and notes; Jackson v. Jackson, 11 L. R. A., 305, and notes; Pearce et al. v. Rickard et al., 19 L. R. A., 472.

When the word appears in a will, *prima facie* it

is intended as a word of limitation, but may by the context be shown to be a word of purchase. 11 Am. & Eng. Enc. L., 877.

In deeds and marriage settlements it is always treated as a word of purchase. 11 Am. & Eng. Enc. L., 876.

In this case it is not insisted by either party that it is a word of limitation, but that it is used as a word of purchase, and it is so treated by the Court of Chancery Appeals.

Mr. Redfield, in his work on Wills, Vol. II., p. 363, says, in substance, that the real intention of the grantor in using the word should be ascertained and followed, and he is of opinion that not one grantor in a thousand would suppose that by using such a word he would be dividing up his estate among all his descendants who might be living at the time of distribution, in such manner as to permit two or three generations—parents and their children and grandchildren—to share concurrently and *per capita* equally as between themselves.

It was his opinion that most testators employ the term in the sense of descending heirs, and that it is most consistent with the testator's intention to hold that the children alive at the time of distribution are intended to take equally, to the exclusion of more remote descendants, unless the latter are an issue of a deceased child, in which case they should take the child's share as representing their parent. Following on the same line, while recognizing the

Ridley *v.* McPherson.

rule as established differently, Lord Loughborough, in *Freeman* v. *Paisley*, 3 Vesey, 420, expressed regret that there was no medium between the rule. of total exclusion of grandchildren and allowing them to share equally with their parent. See, also, 4 Kent's Commentaries, *278, note *b*.

These holdings clearly are based upon an attempt to follow a supposed intention of the testator to keep the several branches of his descendants equal, rather than the strict meaning of the term used. While it is true that the intention should be sought for and followed, it can only be found in the instrument itself. The Court of Chancery Appeals very pertinently says that if John and Samuel McPherson, the grandchildren of the life tenant, are embraced in the term "issue," there can be no good reason why the eight children of Mrs. Ridley, who are such grandchildren, should not be likewise included in the term, as they stand in the same relation and degree to the grantor, nor why Mrs. Ridley is not also embraced, as she stands one degree nearer the grantor than the great grandchildren do. Hence, it properly concludes that Mrs. Ridley and the McPherson children do not take equally one-third. The Court of Chancery Appeals is, however, of opinion that, following the suggestions of Mr. Redfield and Lord Loughborough, it is the better ruling to hold that it was the intention of the testator to give to the word "issue" the same meaning as is given under our statute to the words

"heirs of the body," thus making it a word of purchase, but, at the same time, to hold that the remaindermen should take as if the life tenant had been seized of the entire estate, and it had passed according to the rules of descent, thus keeping up equality in the different branches of the family. The Court of Chancery Appeals says, in conclusion, that it cannot state that such holding is sustained by a majority of the cases of even current authority in the United States, but it seems to be the just rule, in accord with the policy of our laws regulating descents, and more apparently within the intent of the grantor.

We can see no reason why the word "issue," as used in this paper, which, though a deed, is in a certain sense testamentary in its character and operation, should not receive its strict, technical, legal signification. The deed was executed May 27, 1860, and is witnessed by Jno. Marshall and W. G. Marshall, the former one of the most distinguished jurists Tennessee has ever produced, and it is stated at the bar, was written by him. It bears upon its face and in its provisions evidence of legal knowledge and the technical use of legal terms by its draughtsman. If it was not intended that the word should have its legal signification, it is difficult to see why it was used, and why, if such was the grantor's intention, the remainder was not given to the children of Mary E., who might be living at her death, and the living descendants of those who

might have previously died. Such language would clearly have called for the construction which the Court of Chancery Appeals has given. We can see no ground for presuming an intention upon the part of the grantor to keep the several branches of his remote descendants separate, and to bestow his bounty upon them *per stirpes* instead of *per capita*, where he uses a term which embraces all his descendants equally.

There is absolutely nothing in the context of this instrument to show that the word "issue" was intended to have any other than its proper legal signification. If there were such indications in the context, they would furnish a good ground for giving the word a different meaning. 11 Am. & Eng. Enc. L., 872, note 1. But in the absence of such indication the word must receive its proper meaning.

The case of *Pearce et als.* v. *Rickard et als.*, 19 L. R. A., 472, is directly in point and thoroughly considered. In that case, the will in controversy provided that on the death of the life tenant, Sarah C. Rickard, the trustee, Pearce, "should pay over the trust property to her lawful issue then alive."

It was held, citing and commenting on very many authorities, that the word issue, unrestricted by any indication of contrary intention, includes all descendants, and that grandchildren take equally with children, *per capita*, when there was nothing to indicate that a representative or substitutional taking was intended. It was strongly insisted in that case that

the word "issue" should be held to have the ordinary signification of "children," and not a technical one of descendants generally, but it was shown that such construction was against the overwhelming weight of authority in England and the United States, in the absence of any statutory provision or any evidence of intention to be gathered from the instrument.    See the same case, reported in 49 Am. St. Rep., 755.    See, also, *Hartwell* v. *Tefft*, 34 L. R. A., 500; *Soper* v. *Brown*, 32 Am. St. Rep., 731.

The gifts, in this case, to the issue of the life tenant cannot be considered as substitutional, so that such issue must take *per stirpes*.    A gift to issue is substitutional when the share which the issue are to take is by a prior clause given to the parent of such issue, but it is an original gift when not so expressed to be given to the parent of such issue, and the gift in this case falls under the latter head or class.    11 Am. & Eng. Enc. L., 871, note.

It follows that the decree of the Court of Chancery Appeals must be reversed, and the property is decreed equally to the complainants and defendants, as the issue of the life tenant, each taking one-eleventh, and the cause is remanded for further proceedings in the Court below.    The costs of appeal will be paid by the appellees, McPherson.