THIRD NAT. BANK IN NASHVILLE *v.* NOEL *et al.*

(*Nashville,* December Term, 1945.)

Opinion filed March 2, 1946.

E. J. WALSH and WALKER CASEY, both of Nashville, for complainant.

CHARLES L. CORNELIUS, of Nashville for Oscar F. Noel, Hayes A. and Catherine Noel Anderson.

DAVID M. KEEBLE and WALKER & HOOKER, all of Nashville, for John H. Noel.

CHARLES C. TRABUE, JR., of Nashville, guardian *ad litem* for Hayes A. Noel, Jr., Mary Vance Noel, Oscar G. Noel, Jr., Lattie Miller Noel, Charles Anderson, Jr., and Noel Anderson and the unborn children of Oscar F. Noel, Hayes A. Noel and Catherine Noel Anderson.

RICHARD MARSHALL, of Nashville, guardian *ad litem* for Noel Bowen, Nell Virginia Bowen, and the unborn children of Mary Noel Kershaw and Martha Noel Bowen.

JACK NORMAN, of Nashville, guardian *ad litem* for John H. Noel, Jr.

HUME, HOWARD, DAVIS & GALE, of Nashville, for Mary Noel Kershaw and Martha Noel Bowen.

MR. CHIEF JUSTICE GREEN delivered the opinion of the Court.

Oscar Fitzallen Noel died testate on June 11, 1914, at the age of ninety-two years. After certain provisions here immaterial, his will set up a trust for the estate. The trustees were to pay small annuities to named individuals and by the will and a codicil the net income from the remainder of the estate was to be divided into three parts. Testator left three grandsons, John H. Noel, E. T. Noel and Oscar F. Noel, and the trust was to continue until the death of the last grandson. Until that period, as above noted, one-third of the defined net income was to be paid to each grandson or to his surviving issue if dead.

The last of the three grandsons is now dead. The will, modified by the codicil, provided that upon the death of the last grandson the trust should terminate and the trustee should pay over to the issue of his three grandsons the rest, residue and remainder of his estate equally, share and share alike.

One of the grandsons, John H. Noel, left one child and one grandchild. Another of the grandsons, E. T. Noel, left two children and two grandchildren. The third grandson, Oscar F. Noel, left three children and six grandchildren. Being in doubt as to the proper disposition of the estate, the trustee filed this bill for construction of the will, bringing in all necessary parties, several of whom are minors represented by guardians *ad litem*.

Three theories as to the proper construction of the will are presented to the Court and they are as follows:

1. John H. Noel, Jr., the only child of grandson John H. Noel, insists that the distribution should be on a per stirpes basis so as to give him one-third of the estate, one-third to the two children of grandson E. T. Noel, and one-

352

third to the three children of grandson Oscar F. Noel. The chancellor sustained this contention.

2. Mary Noel Kershaw, one of the children of grandson E. T. Noel, contends that two-sixths of the estate should be divided between her and her sister, they being the two children of said grandson, and one-sixth of the estate to the single child of John H. Noel, and three-sixths to the three children of grandson Oscar F. Noel.

3. The children and grandchildren of grandson Oscar F. Noel urge that the estate should be divided per capita among all the issue of the three grandsons surviving at the termination of the trust regardless of the degree of relationship of such issue to the testator.

Under the first theory, that branch of the family stemming from each of the grandsons would receive one-third of the estate. Under the second theory, the John H. Noel branch would receive one-sixth, the E. T. Noel branch two-sixths, and the Oscar F. Noel branch three-sixths. Under the third theory, that of per capita distribution, the John H. Noel branch of the family would receive two-fifteenths of the estate, the E. T. Noel branch would receive four-fifteenths of the estate, and the Oscar F. Noel branch would receive nine-fifteenths of the estate.

In order to understand the controversy it is necessary here to set out certain portions of the will. After the appointment of the trustees, certain provisions as to their duties, and certain annuities to be paid by them, none of which matters are here involved, the will proceeds with directions to the trustees as follows:

"Sixth: To hold, manage, control and handle all said property, income and profits as herein provided in and upon the further Trusts; that is to say,

"(J) To pay over to my grand-sons, O. F. Noel, Jr., or to his surviving issue, if he be dead (his issue if there be

any shall share and share alike), (2) E. T. Noel, or to his surviving issue if he be dead (his issue if there be any shall share and share alike) and (3) John H. Noel, or to his surviving issue, if he be dead (his issue if there be any shall share and share alike), each, annually, the sum of Twelve hundred dollars ($1200.00), payable quarterly.

. . . . . .

"Seventh: I direct that my Trustees continue to pay to my three grand-sons the Twelve hundred dollars annually, as is provided hereinbefore, or until the death of my last surviving grand-son, at which time the trust shall cease and determine upon the payments and settlements herein directed; and at and upon which time, my Trustees shall and are hereby directed to pay over and convey to the surviving children, of my said three grand-sons all the rest, residue and remainder of my estate, equally share and share alike.

"In case my said three grand-sons die, leaving no issue, then my estate shall be divided by my Trustees and conveyed to such persons as would have been my heirs under the laws of Tennessee, if I had then died intestate."

Some four years after the execution of this will, it being dated February 17, 1909, the testator added a codicil containing, among other provisions, the following:

"First: I desire to strike out and cancel paragraph 'Sixth' Items (J) and (K) on pages three and four of my said will, which I do and direct and will accordingly. For said paragraph and items struck out and cancelled, I substitute the following so that said 'Sixth' paragraph, item (J) and (K), shall be as follows, and I so will and direct:

"Sixth: To hold, manage, control and handle all said property, income, and profits as herein provided in and upon the further trusts; that is to say,

"(J) To pay over to my grand-sons, (1) O. F. Noel, Jr., or to his surviving issue, if he be dead, (his issue if there be any shall share and share alike), (2) E. T. Noel, or to his surviving issue if he be dead (his issue if there be any shall share and share alike), and (3) John H. Noel, or to his surviving issue if he be dead (his issue if there be any shall share and share alike) each, one-third of the net income of my estate. In case either or any of my said grand-sons die leaving a wife, I direct that she receive her husband's part for the use and benefit of herself and children, so long as she remains single and unmarried, and in case either or two of my grand-sons die without issue or wife, the net income which would be paid to him or them shall be paid equally to the survivors or to the survivor. But the payments herein directed shall continue only until the termination of the trust created by my will. By the term 'Net income' as used herein, I mean the amount remaining after the payment of all expenses, charges costs and every item of expense connected with the management of my estate, including the special bequests in my said will.

. . . . . .

"Second, in 'Seventh' on page four of my said will, in the second line of said paragraph the words 'Twelve hundred dollars annually' I strike out and cancel and substitute the words 'Net income quarterly.'

. . . . . .

"Fourth: In the seventh line of 'Seventh' paragraph on page four of my said will, the words 'surviving children' are used by mistake and inadvertence. I desire to strike out and cancel said words and substitute instead the words 'surviving issue' and I so will and direct."

With entire respect to counsel who have presented the three theories mentioned as to the proper construction of

the will, we do not think that any one of these theories is entirely correct. We do think that the chancellor was right insofar as he held that the *corpus* of this estate was to be divided into three parts at the termination of the trust, but we do not agree with his further disposition of the estate.

As amended by the codicil, the seventh section of the will provides that at the end of the trust the "Trustees shall and are hereby directed to pay over and convey to the surviving issue of my said three grandsons all the rest, residue and remainder of my estate, equally, share and share alike."

This division was to be equally made among the surviving issue of the three grandsons. If the per capita distribution among all issue is adopted there will be no equality among the issue of the three grandsons. On the contrary, the issue of one grandson will get two-fifteenths of the estate, the issue of another grandson will get four-fifteenths of the estate, and the issue of the third grandson will get nine-fifteenths of the estate.

The issue of three grandsons connotes three groups. The three grandsons do not form a trinity like the Godhead from whom a common issue could descend. Issue in this legal aspect means all the descendants of a common ancestor. This Court has expressly said, following Bouvier, " 'issue' includes all persons who have descended from a common ancestor." *Ridley* v. *McPherson,* 100 Tenn. 402, 404, 43 S. W. 772, 773. The issue here under consideration springs from three ancestors, the testator pointedly used the numeral 3 in describing the issue he had in mind, and he meant three groups.

Another provision of the will which clearly shows that the testator contemplated a division of the estate into three parts is section (K) of the codicil:

"(K) I have advanced certain sums to my said grandsons as follows: (1) To O. F. Noel, Jr., $528.27; (2) To E. T. Noel, $11,500.00; and (3) to J. H. Noel, $521.00; which amounts I desire to equalize in the following way and manner and I direct and will accordingly. That is to say, O. F. Noel, Jr. shall be charged office rent for the offices in the Noel Building, now used by him at $35.00 per month for twenty-six years, making $10,920.00, making his total advancement $11,448.28. J. H. Noel shall be charged office rent for the offices in the Noel Building now used by him at $25.00 per month for thirty-six and one-half years making $10,950.00, making his total advancement $11,501.00. E. T. Noel shall not be charged interest on his advancement during said time, and in case O. F. Noel, Jr., or J. H. Noel cease to use said offices for any reason, they shall have the privilege of rerenting the same on their own account, and in case the said offices are destroyed by fire or otherwise, my Executors and Trustees shall, at their option, either procure other offices for them or pay to them the amounts as are calculated in this paragraph."

Here the testator charges his three grandsons with advancements: O. F. Noel, Jr., $528.27; J. H. Noel, $521; E. T.' Noel, $11,500. He proposes to equalize them by furnishing office rent to O. F. Noel, Jr., in the Noel Building, valued at $35 a month for twenty-six years, and furnishing J. H. Noel office rent in the Noel Building valued at $25 a month for thirty-six and one-half years. Figured out at this rate, the value of the office rent furnished to O. F. Noel, Jr., and J. H. Noel, added to the small advancements previously made them, each is of the value substantially equivalent to the $11,500 advanced to E. T. Noel.

Testator clearly. intended that his three grandsons should be equalized in the distribution of his estate. He must have contemplated that to bring about this equalization in the manner proposed might have extended the period for equalization beyond the lives of any of these grandsons and beyond the existence of the Noel Building, as it did. The only way the three grandsons, all being dead, can be equalized is by equalizing the respective issue of the three. Equalization by office rent is now impractical if not impossible, and the language of (K) of the codicil indicates that under such circumstances testator intended that equalization be made by payment of the "amounts as calculated in this paragraph."

Equalization among the three grandsons can only be made by a division of the estate into three parts and the grandsons all being dead the division must be made among three groups comprised of their respective issue.

Very plainly in the Sixth Item of his will and by the First Item of the codicil, rewriting Item Sixth of the will, testator divided the net income of the estate into three parts, stating that each one of his grandsons, naming them, or if he is dead his issue, if there be any, shall share and share alike.

It does not seem to us that he intended to adopt another scheme for the disposition of the *corpus* of the estate by Item Seventh of the will, nor by the amending codicil. In (J) of Item Sixth of the will he separately passed to each of his grandsons, or their issue if dead, one-third of the income. We regard Item Seventh of the will as merely an undertaking by testator, for the sake of brevity, to make the same disposition of the *corpus* in a simple rather than a compound sentence. The codicil did nothing except to substitute the word issue for children in Item Sixth. It appears as if testator had said I give to the

issue of each of my three grandsons one-third of my estate, instead of saying I give to the issue of No. 1 one-third, to the issue of No. 2 one-third, and to the issue of No. 3 one-third.

We think we have said enough on this point, but it may be added that other items of the will confirm the idea that testator intended to divide the *corpus* of his estate into three parts.

This brings us, then, to the question of the division of the several portions. The final language of the testator is that the division is to be made among the surviving issue of the three grandsons at the termination of the trust.

██ The rule in this state, as announced in *Ridley* v. *McPherson*, 100 Tenn. 402, 43 S. W. 772, is that *issue* includes all persons who have descended from a common ancestor; that unless controlled by the context, it means lineal descendant without regard to degree of proximity or remoteness from the original stock or source. This is in accordance with the great weight of authority as shown by many cases collected in notes, 2 A. L. R. 918, and 5 A. L. R. 195. That the rule still prevails in this jurisdiction, unless controlled by the context, is recognized in the later cases of *Lea* v. *Lea*, 145 Tenn. 693, 237 S. W. 59, and *White* v. *Kane*, 178 Tenn. 469, 159 S. W. (2d) 92. In the two later cases the Court found the context required that a different meaning be given to the word.

While we recognize that such an interpretation of the word issue is not much favored by the courts and will not be adopted if there is a faint glimpse of a contrary intention in the instrument involved, nevertheless what may be called the technical definition of issue is now a rule of property and is to be accepted unless we can perceive in

the instrument using the word some glimpse of a contrary design.

In the will before us we catch no glimpse of an intention on the part of the testator to make any distinction between his descendants of the third degree and the fourth degree, or, to speak colloquially, between his great-grandchildren and his great-great-grandchildren. As we understand the record, there was only one great-grandchild living at the time of his death, she an infant a few months old. We think that testator was not concerned with the degree of the relationship that the descendants of the grandsons bore to him. They were too remote.

All the reasons offered to support the theory that the testator wished his estate distributed at the end of the trust according to our statute of descent and distribution merely go to show that he wished the estate divided into three parts among the issue of his grandsons. In the Seventh Item of the will he provided that the estate be distributed according to the laws of Tennessee if his three grandsons died without issue. He could have said that he wished his estate divided according to the laws of Tennessee at the termination of the trust, if he had so desired. On the contrary, he said he wished the estate divided among the surviving issue of his three grandsons. The language is very plain.

█ It was conceded at the bar that both the testator's will and the codicil thereto were drafted by lawyers. Under such circumstances, technical words used in such instruments are given technical meanings.

█ We are unable to construe the word issue as used in this will and codicil as meaning children, for, as heretofore seen in Item Fourth of the codicil, this testator says that the words *surviving children* were used by mistake in the seventh paragraph of the will and added,

"I desire to strike out and cancel said words and substitute instead the words 'surviving issue' and I so will and direct." Plainly this change was made under legal advice. Without doing violence to an express direction of the testator, we could not write into the will a word which he has in as many words directed should be stricken out.

 An assignment of error is made by one of the parties hereto challenging the action of the chancellor in excluding from the evidence a deed made by testator in 1891 conveying a certain tract of land to his son for life with remainder for life to his three grandsons herein mentioned and thereafter providing for a devolution of the property according to the Tennessee law of descent. This is offered as evidence indicating testator's desires as to how his estate should be disposed of and how this will should be construed.

We think the chancellor was correct in excluding this document. An instrument made in 1891 can scarcely be looked to as reflecting upon the intention of the maker with respect to instruments made in 1909 and 1913. Moreover, if the old deed were admitted it might as well be argued that since testator knew how to dispose of property according to the statute of descent and distribution, he would have employed that method if he had wanted to dispose of his property by his will in the same way.

 Such being our views of the case, the decree of the chancellor will be modified as follows:

1. One-third of the estate will go to John H. Noel and his son, John H. Noel, Jr.—one-sixth of the estate to each.

2. One-third of the estate will go to Mary Noel Kershaw, Martha Noel Bowen, Noel Bowen, and Nell Virginia Bowen—one-twelfth of the estate to each of these.

3. One-third of the estate will go to Oscar F. Noel, Jr., Oscar F. Noel, III, Lattie Miller Noel, Hayes A. Noel, Hayes A. Noel, Jr., Mary Vance Noel, Catherine Noel Anderson, Charles Anderson, and Noel Anderson—one-twenty-seventh of the estate to each.

Upon the expiration of the trust the estate is to be divided among the "surviving issue" of the three grandsons. That means the issue living at the expiration of the trust. To survive the trust, the issue must have lived contemporaneously with the trust.

Equalization will be made of the three interests before distribution, calculating the advancements as indicated in Item (K) of the codicil..

Tax costs of this Court to the estate and remand for further proceedings.