# AMERICAN NAT. BANK & TRUST CO. v. MANDER et al.—253 S. W. (2d) 994.

Eastern Section.   July 15, 1952.

Petition for Certiorari denied by Supreme Court, October 10, 1952.

222

Miller, Martin, Hitching & Tipton, of Chattanooga, for complainant.

Whitaker, Hall & Haynes, of Chattanooga, for Benwood Foundation, Inc.

Ella Jo Stollberg, of Hollywood, Fla., for Margaret H. Mander and Georgeanne Mander Leeds.

William G. Brown, of Chattanooga, guardian ad litem.

HOWARD, J. Complainant, American National Bank & Trust Company, as executor and trustee under the will of the late George T. Hunter, filed the original bill herein asking for the construction of the will. Mr. Hunter, unmarried, a prominent and wealthy citizen of Chattanooga, died on October 3, 1950, leaving an estate estimated at from nine to fourteen million dollars.

Defendant, Benwood Foundation, Inc., a Delaware corporation, was incorporated November 10, 1944, for the purpose of promoting "religious, charitable, scientific, literary and/or educational purposes." The other defendants include Mr. Hunter's five sisters and several nieces and nephews, some of them minors, who are represented by their guardian ad litem, Mr. William G. Brown, of the Chattanooga Bar.

The original will was executed by Mr. Hunter on November 14, 1944, and about a year later, on November 30, 1945, he executed the first and second codicils thereto. The will was admitted to probate in the County Court of Hamilton County on October 7, 1950, and on said date the complainant herein qualified as executor.

By the terms of the will, Mr. Hunter gave about two-thirds of his estate to the Benwood Foundation. The

residue thereof he left in trust for his sisters and others, as will hereinafter appear. The pertinent parts of the will are as follows:

"1. I direct that all my just debts, including funeral expenses and expenses of administration, be paid by my executor, hereinafter named."

"4. I give, devise and bequeath unto Benwood Foundation, Inc., a foundation incorporated or to be incorporated under the laws of the State of Delaware, the following personal and real property:

"(a) All the capital stock of Coca-Cola Bottling Co. (Thomas), Inc., all the capital stock of Coca-Cola Bottling Works (Thomas), Inc., and all the capital stock of Coca-Cola Bottling Works, 3rd, Inc., of which I may die seized and possessed, of which I may be in any way entitled." (Real Estate referred to in this paragraph consisted of 3 valuable pieces of property located in Chattanooga and Hamilton County.)

"5. All the residue and remainder of my estate, of any and every kind and description whatsoever, whether same shall be real, personal or mixed, of which I may die seized and possessed, or to which I may be in any way entitled, including proceeds of policies of insurance upon my life payable to my estate, I give, devise and bequeath unto American Trust and Banking Company, of Chattanooga, Tennessee as Trustee."

"6. *I specifically direct my executor hereinafter named to pay from and charge against my residuary estate any and all State and Federal Inheritance, Estate or Death Taxes assessed against or collectible from any of the assets (including insurance policies*

*on my life) or any of the beneficiaries (including the beneficiaries of such insurance policies) of my estate."*

·The first codicil to the will reads as follows:

*"I direct that all the expenses of the administration of my estate be paid from the fund bequeathed and devised in Section Four (4) of my said will to Benwood Foundation, Inc.; so that the bequest and devise to said Benwood Foundation, Inc., shall consist of the assets described in said Section Four (4) diminished by such part thereof as may be necessary ·to pay said administration expenses."* (Emphasis supplied.)

The second codicil created a trust for third parties for life, and at their death the principal becomes part of the residuary estate.

It appears that after the probate of the will one or more of the testator's sisters took the position that their brother intended by the first codicil to relieve the residuary trust (paragraph 6 of the will) of the State Inheritance and Federal Estate Taxes, commonly known as Death Taxes, by placing the burden of these taxes upon the Benwood Foundation; that the words of the first codicil "all the expenses of the administration of my estate" included said taxes, and that this codicil revoked paragraph 6 of the will.

The Benwood Foundation, Inc., and all of the adult defendants filed separate answers to the bill, but joined in asking for a construction of the will. The guardian ad litem also filed formal answers for the minor defendants.

By stipulation it was agreed that Mr. Vaughn Miller, prominent attorney of the Chattanooga Bar, was the

draftsman of the will, and the testator's legal advisor, and that the Commissioner of Internal Revenue had ruled that gifts and contributions to the Benwood Foundation were allowable deductions under the Federal Revenue Act.

Upon the hearing the Chancellor held that the State Inheritance and Federal Estate Taxes should be paid out of the residuary trust as provided in paragraph 6 of the will, and both the executor-trustee and the Benwood Foundation, Inc., concur therein.

From the Chancellor's decree one of the legatees, Mrs. Margaret H. Mander, the testator's sister, and her daughter, Mrs. Georgeanne Mander Leeds, a residuary legatee, and the guardian ad litem, have appealed, and have assigned errors in which it is insisted (1) that the first codicil revoked paragraph 6 of the will, (2) that the term ''all the expenses of the adminstration of my estate'' included the death taxes, and (3) that said taxes should be paid out of the funds bequeathed to the Benwood Foundation.

The first question presented for our determination is whether the first codicil impliedly revoked paragraph 6 of the will. This question must be answered in the negative if the terms of said codicil can be reasonably reconciled with the other provisions of the will. Under our decisions all parts of the will must be given effect, if possible, as every word used by the testator is presumed to have some meaning, and no word or clause will be rejected to which a reasonable effect can be given. Magevney v. Karsch, 167 Tenn. 32, 65 S. W. (2d) 562, 92 A. L. R. 343; McClure v. Keeling, 163 Tenn. 251, 43 S. W. (2d) 383. And where there is a will and codicil, as in the present case, the two will be construed together as one composite instrument, giving effect, if possible, to

every provision therein. Podesta v. Podesta, 28 Tenn. App. 282, 189 S. W. (2d) 413, 415-416. Magevney v. Karsch, supra.

In Podesta v. Podesta, supra, the Court said:

"Since the two instruments together have been adjudged to constitute 'the whole true and last will' of the testator they are to be considered together as a composite writing and all of its provisions are to be looked to for the purpose of ascertaining the intention of the testator. The intention of the testator is the cardinal rule by which the courts are to be governed in the construction of wills, and that intention is to be gathered from the scope and tenor of the whole will, and that intention when fairly ascertained will be given effect unless it be in violation of some established principle of law or in contravention of public policy. For the purpose of ascertaining the intention of the testator all parts of the will will be looked to and apparent inconsistencies will be reconciled and resolved so that each legacy and devise will be sustained and upheld if possible to do so without doing violence to the language used." (Citing cases.)

In Magevney v. Karsch, supra, the Court said [167 Tenn. 32, 65 S. W. (2d) 571]:

"It is a familiar principle in the construction of every writing that all portions of that writing are to be taken into account and effect given to every part thereof if possible."

And in Rodgers v. Rodgers, 53 Tenn. 489, the Court said:

"In regard to the question of the codicil being a revocation of the bequest in the will, the rule, as

stated by Mr. Jarman, Vol. 1, p. 160, and approved by this court in Brown v. Cannon, 3 Head. 357, is 'not to disturb the dispositions of the will further than is absolutely necessary for the purpose of giving effect to the codicil.' "

Applying the foregoing rules of construction, we think that the first codicil can be reconciled with the provisions of the will "without doing violence to the language used."

By Section 1 of the will the testator expressly provided that "expenses of administration be paid by my executor". No further reference was made by the testator to expenses of administration in the original will, and had he intended by the codicil to revoke Section 6, as insisted, he would have made some express reference thereto, or to the subject matter therein, the payment of the death taxes. Likewise, it may be assumed that the codicil referred to Section 1 of the will inasmuch as both contained the same subject matter. The law is settled that where the same words are used in different parts of a will relating to the same subject matter, they are presumed to be used always in the same sense unless a contrary intention appears. Robertson v. Brown, 13 Tenn. App. 211. And a doubtful phrase may be construed by comparing it with similar phrases in other parts of the will in which the intention of the testator is clear. 69 C. J., Sec. 1142, p. 54.

Furthermore, by Section 4 of the will the testator bequeathed to Benwood Foundation, Inc., "a foundation incorporated or to be incorporated", a large portion of his vast holdings in the Coca-Cola Companies in which he was interested, as well as several valuable pieces of real estate, all totaling, as agreed, several million dollars. Appellants, Mrs. Mander and Mrs. Leeds, insist in their

brief that "while it is immaterial how the tax falls and not an issue of this case, using the figures of the Internal Revenue Department, which are a matter of law, it would show that Benwood Foundation, Inc., would still get upwards to one-half million dollars even if the low valuation of approximately Nine Million Dollars is used for this controlling stock of these fabulous bottling works." Assuming the correctness of appellants' statement that the bequest to the Benwood Foundation has a valuation of "approximately nine million dollars" it must be remembered that the testator was very wealthy, and for this reason he was probably more tax conscious than the average citizen, and looking at the situation from his point of view, as we are required to do, it must be conceded that it was very material to him as to what disposition he made of his vast estate as well as how the taxes would be paid.

Unjust as it may seem to those who feel that they are entitled to a greater share of the testator's estate, the fact remains that it is highly improbable that a man of his ability and business experience would give nine million dollars to the Foundation and thereafter, in a little more than a year, execute a codicil by which this amount would be reduced by payment of the death taxes to the sum of five hundred thousand dollars. On the other hand, according to appellants' brief, if the taxes are paid as provided under Section 6 of the will, they total approximately two million, two hundred thousand dollars, a savings to the estate of more than six million dollars. Hence we find no conflict between the will and the codicil, and that the codicil was not intended as a revocation of, or substitute for, Section 6 of the will.

We now pass to the determination of the question of whether the words "all the expenses of the

administration of my estate'' contained in the first codicil include the death taxes. This question must also be answered in the negative. In support of their contention the appellants rely upon the decision in the case of Harris v. Frierson, 186 Tenn. 593, 212 S. W. (2d) 591, 592, in which the pertinent parts of the will read as follows:

"It is my will that all my debts owing by me at the time of my death, the *costs of the administration and charges against my estate* shall be a charge against the said lands disposed of by this item of my will but I do not desire said tract of land sold to pay debts and direct my executor if necessary, to rent out said lands for a sufficient length of time to *pay all my debts and the taxes* on said lands and the upkeep of the same and the *costs of the administration of my estate.''* (Emphasis supplied.)

Because of the difference in the textual language of the two wills, we think that the instant case can be distinguished from the Harris-Frierson case. In that case there was no specific provision directing how the taxes should be paid, and there being no codicil the court was not called upon to reconcile the will therewith. As may be observed, the will in that case enumerated (1) debts, (2) costs of administration, (3) charges against my estate, (4) upkeep of property, and (5) taxes, and the court held "From a study of the will in its entirety", death taxes were included. Thus the court did not base its decision specifically on the words "expenses of administration" or on any one of the aforementioned items, but on the will in its entirety. For the foregoing reasons, we think that the rule stated by the court in that case is not controlling here.

In this Estate, under authorities hereinafter cited, the Inheritance and Federal Estate Taxes are not included in the terms "expenses of administration" or "costs of administration."

In Am. Jur., it says:

"Under inheritance tax laws, the tax is not one of the expenses of administration, or a charge upon the general estate of the decedent; it is in the nature of an impost tax or a tax upon the right of succession to be imposed upon the several amounts of the decedent's estate to which the successors thereto are, respectively, entitled." Vol. 28, Sec. 278, p. 136.

In C. J. S. administration expenses are defined as follows:

"As a general rule only such expenses as are incurred for the benefit of the estate as a whole are allowable as expenses of administration, and expenses incurred for the benefit of the widow, heirs, legatees, or devisees are not allowable as expenses of administration. Administration expenses have been held to include expenses of probating the will, the expenses of litigation in behalf of the estate, the compensation of the personal representative, and an estate duly taxable under the laws of the country where decedent was domiciled. Under some statutes the allowance of a claim against the estate for the premium on the executor's bond is within the discretion of the court, and it may be allowed, and, in a proper case, may be denied. Attorney's fees for services rendered to the representative in connection with the performance of his duties are expenses of administration and payable out of the assets, and expenses incurred by the executor in carrying out the

provisions of the will stand on the same footing as expenses of administration.'' 34 C. J. S., Executors and Administrators, Section 388, p. 150.

In Sizer's Pritchard Law of Wills and Executors, 2d Ed., an authority recognized by both the bench and the bar of this state, expenses of administration or costs of administration are enumerated as follows:

''Expenses of administration, which include the allowances to the personal representative for his own services and reasonable counsel fees, for which he is individually liable, are as proper charges against the estate as funeral expenses of the deceased, and the amounts paid or incurred for these purposes, if reasonable in amount and necessary and proper, will be allowed the representative in his settlement.'' Sec. 655, p. 717.

''The costs of administration will include the expenses of proving and recording the will and defending it if attacked; the clerk's fees for issuing and recording letters testamentary or of administration; the expenses incident to making sale of the personal effects, making and recording inventories and accounts of sales; necessary attorney fees, and costs adjudged against the executor or administrator in any suit brought or defended for the benefit of the estate; the expenses necessarily incurred in collecting and preserving the assets, and, in short, all current expenses incident to the management of the estate in a discreet and prudent manner.'' Sec. 743, p. 831.

It appears that when the foregoing text was revised in 1928, by the late Mr. J. B. Sizer of the Chattanooga Bar, both inheritance and estate taxes were in existence, and had the inheritance tax been considered as an item of expense of administration it probably would have been

included in, Section 743 rather than Section 743(a), which gives a history of the inheritance tax laws of Tennessee prior to that year.

Though not conclusive, it is to be noted that in determining the net estate after allowable deductions, Section 1265 of Williams (Tenn.) Code separates all taxes from expenses of administration under the following Subsections:

"(b) Taxes.

\* \* \* \* \* \*

"(3) Federal income taxes accrued upon the income of the decedent at the date of death.

"(4) Death duties paid or payable to other jurisdictions on intangible personal property but no deduction shall be allowed for the payment of any federal estate taxes.

\* \* \* \* \* \*

"(d) Expenses of administration, including compensation of executors, administrators, or trustees and their attorneys, actually allowed and paid, not in excess of lawful rates."

It is conceded that both the testator's will and the codicil thereto were drafted by an experienced lawyer who unquestionably was familiar with the laws applicable to wills and the administration of estates in this state. Under such circumstances, technical words used in said instruments are to be given technical meanings. Third National Bank v. Noel, 183 Tenn. 349, 192 S. W. (2d) 825.

It appears to us that if the testator had intended to include death taxes in the codicil, as insisted, he would have so indicated, and in the absence of such indication, we are compelled to hold that the terms "expenses of administration," "administration expenses," and "costs

of administration," do not in this State include the death taxes.

The guardian ad litem complains that the Chancellor erred in holding that "the taxes on the trust created by the second codicil should be borne by and charged to the residue." This was not error because under Section 6 of the will the testator directed that all the death taxes chargeable on "any of the assets * * * or any of the beneficiaries * * * of my estate" shall be paid out of the residuary estate.

The guardian ad litem also complains that "The Chancellor erred in pretermitting the question of, and in his failure to find that, the taxes, if any, which may be assessed against the inter vivos trusts should be chargeable to the respective trusts rather than the residue of the estate." This was not error because the pleadings did not ask for a ruling on this question. Moreover this assignment involves a theoretical or abstract question, based on a contingency which may or may not arise. United States F. & G. Co. v. Askew, 183 Tenn. 209, 191 S. W. (2d) 533.

The remaining assignments are directed at the Chancellor's failure to pass upon and sustain appellants' exceptions to the testimony of three of appellees' witnesses. In disposing of these exceptions the Chancellor said:

"Action on the foregoing objections to testimony was not taken by me because in my opinion consideration of the evidence objected to, whether competent or incompetent, was not necessary to proper construction of the will and accordingly was not considered by me in reading my conclusion."

It occurs to us that appellants have little if any grounds for complaining of the Court's action, for had the Chan-

cellor considered the evidence objected to and found therein any competent proof, this would probably have strengthened the appellees' position rather than weakened it. Under the circumstances the Chancellor's failure to act upon the appellants' exceptions was harmless and not prejudical. We likewise have not considered the evidence objected to because we have found no ambiguity in the will or codicil calling for parol evidence.

The respective attorneys have ably and thoroughly presented this case, and it is not without considerable effort that we have concluded that the assignments are without merit. Therefore, all assignments are overruled and the decree will be affirmed. The costs incident to the appeal will be taxed against the Benwood Foundation and the cause will be remanded for references as to attorneys' fees, including that of the guardian ad litem.

McAmis and Hale, JJ., concur.