THIRD NATIONAL BANK IN
NASHVILLE, Executor,
Plaintiff,

v.

Beverly Jakes STEVENS, Susan Jakes
Fuqua, Defendants–Appellees,

Charlotte Bowman Jakes, and Jill Bow-
man Jakes, Defendants–Appellants.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

April 15, 1988.

Permission to Appeal Denied by
Supreme Court July 18, 1988.

W.J. Michael Cody, Atty. Gen. and Re-
porter and Ann Louise Vix, Asst. Atty.
Gen., intervenors.

Alfred H. Knight & Jeffrey Rapphun,
Nashville, for Beverly Jakes Stevens.

Donald D. Hildebrand, Nashville, for Su-
san Jakes Fuqua.

Morton B. Howell, and Andree Kahn Blumstein, Nashville, for Charlotte Bowman Jakes and Jill Bowman Jakes.

## OPINION

TODD, Presiding Judge.

This is a suit by a testamentary executor/trustee for a declaratory judgment as to the identity of the beneficiaries of the trust. The defendants, Charlotte Bowman Jakes and Jill Bowman Jakes have appealed from a judgment adverse to their interests. The plaintiff-executor/trustee is a nominal appellee, and has filed no brief in this Court. The active appellees are the other captioned defendants.

### The Will

On December 19, 1962, Ed F. Jakes executed his last will and testament. After certain specific bequests, the will provided:

ITEM III: I give, devise and bequeath all of the rest, residue and remainder of the property I may own or have an interest in at the time of my death, real, personal, or mixed, and wheresoever situate, to my Trustee hereinafter named, for the following uses and purposes to wit:

(a) My Trustee shall divide the Trust into two equal parts with one of such equal parts to be designated as Trust Fund A and the other equal part to be designated as Trust Fund B. Trust Fund A shall be held for the use and benefit of Robert G. Jakes and/or his bodily issue, if any, and he or they shall receive the net income therefrom but at the death of Robert G. Jakes, either before or after my death, if he shall leave no bodily issues surviving him, then Trust Fund A shall be merged into Trust Fund B and shall go to the same beneficiaries as those I shall designate to receive Trust Fund B.

(b) If, however, my son, Robert G. Jakes shall leave bodily issue surviving him, then Trust Fund A shall be held for the benefit of his bodily issue in equal shares until each of the said issue attains the age of twenty-one (21) years with the net income to be distributed for the use and benefit of said issue during his or her minority. Each said issue shall be entitled to receive outright his or her portion of the Trust upon attaining the age of twenty-one (21) years.

(c) The beneficiaries of Trust Fund B shall be my son, E. Hays Jakes, his wife, Charlotte Bowman Jakes, and his daughter, Miss Jill Bowman Jakes. My said son shall be entitled to receive one-half (½) of the net income accruing to the said Trust Fund B during his lifetime and upon his death my granddaughter, Miss Jill Bowman Jakes, shall receive that portion of the income which had formerly been paid to him.

(d) The other one-half (½) of the net income of Trust Fund B shall be paid to Charlotte Bowman Jakes, wife of my son, E. Hays Jakes for and during her lifetime for so long as she remain his widow. Upon her death or upon her remarriage her interest in the Trust shall cease and the net income accruing to this one-half (½) of Trust Fund B shall then be paid to my granddaughter, Miss Jill Bowman Jakes for and during her lifetime.

(e) The share of my Trusts which shall be held for the use and benefit of my said granddaughter shall be governed by the following terms and conditions:

During the lifetime of my said granddaughter, my Trustee shall pay over in convenient installments not less often than quarter-annually to her, or for her use and benefit, all of the net income and such amounts of the principal as, in the discretion of my said Trustee, may be necessary or advisable to provide for her happiness, comfort and general welfare and to maintain her in accordance with the standard of living to which she has become accustomed, keeping in mind the size of the trust estate and the sources of funds or income available to her elsewhere.

(f) If any of the principal of the Trust remains undistributed to my said granddaughter at the time of her death and she shall die leaving issue surviving, then whatever remains shall be paid over in equal shares to or for the benefit of

her issue, but if she should die without issue, then whatever remains undistributed at her death shall be paid over or delivered to such person or persons as would have been entitled to inherit the said property as heirs and distributees of mine under the laws of Tennessee applicable to the distribution of intestate property.

### . The Facts

As indicated in the will, the testator had two sons, Robert Jakes and Hays Jakes.

In 1933, Hays Jakes married Charlotte Bowman, and they had one child, Jill Jakes. Hays Jakes died in 1973, survived by his wife and daughter. Charlotte Jakes has not remarried, and Jill Jakes has never married. They survive and are parties to this suit.

In 1960, Robert Jakes married Jewel Leek Benderman. No children were born to this marriage. On January 6, 1963, Robert Jakes adopted Beverly and Susan Benderman, daughters of Jewel Leek Benderman Jakes by a previous marriage. Jewel Jakes died in 1972. Robert Jakes died September 15, 1986. Beverly is now Beverly Jakes Stevens and Susan is now Susan Jakes Fuqua; and both are parties to this suit.

Ed Jakes died in 1965. The will was duly probated and the trust was duly administered until the death of Robert Jakes in 1986 when the question arose as to whether the two adopted daughters, Beverly and Susan, were the beneficiaries of Trust Fund A, or whether Trust Fund B merged with Trust Fund B for lack of bodily issue of Ed Jakes.

### The Statute

In 1962, when Ed Jakes executed his will and in 1965, when he died, T.C.A. § 36–126 (now § 36–1–126) read as follows:

36–126. Effect of adoption on relationship.—The final order forthwith shall establish the relationship of parent and child between the petitioners and the child as if such child had been born to them in lawful wedlock, and from the date of the signing of the final order of adoption, the child shall be entitled to inherit real and personal property from the adoptive parents, and from other adopted children within the adoptive family, or from natural born children within the adoptive family in accordance with the statutes of descent and distribution, and such adopted children or natural born children to the adoptive parents shall inherit from him, but only property of the child acquired after his adoption. Also the adoptive parents shall be entitled to inherit from the adopted child both real and personal property acquired from relatives of the adoptive parents. It is the intent of this chapter to preclude all heirs of the adoptive child except those within the adoptive family, lineal descendants, or spouse, from sharing in any part of the estate of the adoptive parents or the estate of relatives of the adoptive parents. [Acts 1951, ch. 202. § 23 (Williams, § 9572.37); 1955, ch. 302, §§ 1, 2; 1957, ch. 345, § 1.]

The present § 36–1–126(c) reads as follows:

(c) In the construction of any instrument, whether will, deed or otherwise, whether executed before or after March 29, 1976, and whether the testator or other party creating an interest by such instrument died before or after March 29, 1976, or before or after an adoption, a child so adopted and the descendants of such child shall be deemed included within a class created by any limitation contained in such instrument restricting a devise, bequest or conveyance to the *lawful heirs, issue, children, descendants, or the like,* as the case may be, of the adoptive parents, or of an ancestor or descendant of one of them, and such adopted child shall be treated as a member of such a class *unless a contrary intention clearly shall appear by the terms of such instrument* or unless the particular estate so limited shall have vested in interest and in possession in and as to the person or persons entitled thereto on March 29, 1976; provided, however, this sentence shall not apply in the construction of any instrument as to

any child who is over the age of twenty-one (21) years at the time of his adoption. (emphasis supplied)

It is seen that the present statute requires that, in the construction of the will of Ed Jakes, executed in 1962 and probated in 1965, the adopted children of Robert Jakes, son of Ed Jakes must be included in a class created by a limitation to

> lawful heirs, issue, children, descendants, or the like ... unless a contrary intention shall clearly appear by the terms of such instrument or unless the particular estate so limited shall have vested in interest and possession in and as to the persons entitled thereto on March 29, 1976.

### The Judgment of the Trial Court

The Trial Court held that the statutory words, "lawful heirs, issue, children, descendants, or the like" was intended by the Legislature to and does include the words, "bodily issue", so that adoptive children are thereby included in the words, "bodily issue". The Trial Court also held that the statute is constitutional.

Accordingly, the Trial Court concluded that Beverly Jakes Stevens and Susan Jakes Fuqua are to be regarded as bodily issue of Robert Jakes and, as such are entitled to the benefits of Trust Fund A.

### The Issues on Appeal

Appellants present the following issues for review:

1. Did Ed Jakes, testator, intend to exclude the adopted daughters of his son Robert Jakes as remaindermen under a trust established in the will?

2. May the Court resort to a statutory or other aid to construe the testamentary trust despite the fact that the trust is unambiguous?

3. If the rule of construction in Tenn. Code Ann. § 36–1–126 does apply, then does the testator's intent to exclude the adopted daughters of Robert Jakes "clearly appear?"

4. If Tenn. Code Ann. § 36–1–126 is deemed to apply to defeat the intent of the testator, is the statute, as applied, unconstitutional?

### The Intent of the Testator

■ The first and foremost rule in the interpretation of wills, to which all other rules must yield, is that the intent of the testator as expressed in the will must prevail. *Smith v. Bell*, 31 U.S. 68, 6 Pet. 68, 8 L.Ed. 322 (1832); *Harris v. Bittikofer*, Tenn. 1976, 541 S.W.2d 372, and authorities stated therein.

In *Banovic v. Davis*, Tenn.App. 1982, 642 S.W.2d 153, the question was whether an adopted son of a legatee was entitled to take the share of the deceased legatee where the will provided that such share should be received by the "issue per stirpes" of such deceased legatee.

After quoting the 1976 amendment of T.C.A. § 36–1–126, and stating that the will was last published in 1946 and the testator died in 1949, and reviewing numerous authorities, this Court held that the adopted son was not entitled to take.

■ Where a will is drafted by a lawyer, technical words used therein must be given technical meanings. *Third National Bank in Nashville v. Noel*, 183 Tenn. 349, 192 S.W.2d 825 (1946); *American Nat. Bank & Tr. Co. v. Mander*, 36 Tenn.App. 220, 253 S.W.2d 994 (1952).

The will of Mr. Jakes was prepared by a lawyer.

■ Every word used by the testator is presumed to have some meaning. *American National Bank & Trust Co. v. Mander*, 36 Tenn.App. 220, 253 S.W.2d 994 (1953).

■ The will is to be interpreted in the light of the circumstances existing at the time of its execution. *Locke v. Davis*, Tenn. 1975, 526 S.W.2d 455.

The will is to be interpreted in the light of its general purpose. *Moore v. Neely*, 212 Tenn. 496, 370 S.W.2d 537 (1963).

The will is to be interpreted in the light of the law in existence at the time of the death of the testator, for, until his death, the testator has the opportunity to change his will to conform to existing law. T.C.A.

§ 32–3–101; *Bell v. Shannon,* 212 Tenn. 28, 367 S.W.2d 761 (1963).

It is the absolute right of the testator to direct the disposition of his property at his death, and the Courts are limited to the ascertainment and enforcement of his directions. *National Bank of Commerce v. Greenberg,* 195 Tenn. 217, 258 S.W.2d 765 (1953).

At the time of the execution of the will (1962) Charlotte Jakes had been the daughter-in-law of Ed Jakes for 29 years, and Jill Jakes had been his only granddaughter for 25 years.

At the time of the execution of the will, Jewel Jakes had been the daughter-in-law for 2 years, and her two daughters, had been the step-children of Robert Jakes for 2 years. The adoption petition was filed on December 6, 1962, thirteen days before the execution of the will, and the adoption order was entered on January 6, 1963, eighteen days after the execution of the will. The testator died on June 11, 1965, two years and five months after the adoption. No change was made in the will.

The testator's wife predeceased him, hence it was natural for him to provide that the bulk of his estate should be divided into two equal trust funds, one for the benefit of each son. It was also natural for the testator to provide for his daughter-in-law and granddaughter of many years after the death of his son, Hays.

It is understandable that the testator did not make like provision for his other daughter-in-law and her children by a former marriage, since they had become a part of the family only recently and were not blood relatives. It is also understandable and natural for a testator to exclude non-blood family members by such conditions as "bodily issue" rather than to expressly exclude. Testator made specific provisions for all other family members, and the only non-blood family member mentioned received substantially less than blood members.

Prior to the 1976 amendment of T.C.A. § 36–1–126, the word, "issue", under Tennessee law, did not include adopted children. *Hamilton National Bank of Chat-tanooga v. United States,* D.C.Tenn. 1965, 236 F.Supp. 1005, affd—6th Cir.1966, 367 F.2d 554.

Issue means all persons who have descended from a common ancestor, offspring, progeny, descent, lineage, lineal descendants.—Black's Law Dictionary, Fourth Edition, p. 965.

The verb, issue, derives from the Latin ex (out) and ire (to go), thus to go out.

The noun, issue, from the same derivation, means "something proceeding or coming forth from a specified source." Webster's Third New International Dictionary, Unabridged.

Thus, "bodily issue" must mean something proceeding out of a specified body. The bodily issue of a person is one who proceeded by the physical process of procreation, out of the body of the specified person.

■ Bodily heirs means heirs begotten or borne by the person referred to. *Black,* supra, p. 221. A grant to the grantee and his heirs conveys a fee simple title, but a grant to the grantee and his bodily issue creates a fee conditional estate, which is a life estate convertible into a fee by the birth of bodily issue to the grantee. *Kinnaird v. Farmers' & Merchants' Bank,* 249 Ky. 661, 61 S.W.2d 291 (1933).

The terms "bodily issue" and "bodily heirs" are synonymous. *Turpin v. Jarrett,* 226 N.C. 135, 37 S.E.2d 124 (1946).

■ The words, "heirs of the body", and "bodily heirs" are "words of limitation" and not "words of purchase". *Combs v. Combs,* 294 Ky. 89, 171 S.W.2d 13 (1943); *Beasley v. Beasley,* 404 Ill. 225, 88 N.E.2d 435 (1949).

The words, "bodily heirs" are words of limitation, the grantee receiving only a life estate with reversion to the grantor in event of death without bodily issue. *Bibo v. Bibo,* 397 Ill. 505, 74 N.E.2d 808 (1947).

■ Absent an adoption statute to the contrary in effect at the time of a deed, adopted children are not included in the words, "bodily heirs". *Clarkson v. Hat-*

*ton,* 143 Mo. 47, 44 S.W. 761, 39 L.R.A. 748, 65 Am.St. Rep. 635 (1898).

In *Adams v. Merrill,* 49 Ind.App. 315, 85 N.E. 114, 87 N.E. 36 (1908) an adopted child was held to be not included in the phrase "heirs of the body" of the grantee.

In *Moore v. McAlester,* Okla. 1967, 428 P.2d 266, (1967), it was held that the phrase "issue of her body" excludes adopted children. The Court said:

> The phrase, "issue of her body" has a clear and well defined meaning. It is not ambiguous or doubtful. It is such a phrase as is customarily used (as distinguished from the word, "issue") for one purpose and one purpose only—to exclude adopted children from the class described. 428 P.2d at 270.

A contrary result was reached in *In re Trusts of Harrington,* 1977, 311 Minn. 403, 250 N.W.2d 163, in spite of a dissent citing *Moore v. McAlester,* supra.

Other authorities, pro and con are cited under the text in 2 Am.Jur.2d Adoption § 98, pp. 938, 1939.

This Court prefers and follows the reasoning of *Moore v. McAlester* which favors the right of a testator to dispose of his property by words of clear and unequivocal meaning without unreasonable legislative or judicial interference or alteration. This is consistent with the verbiage and spirit of the Tennessee Statute.

This Court concludes that the expression "bodily issue" is *not* included in the statutory words, "or the like" because "bodily issue" is not synonymous or "ejusdem generis" or "sui generis" with the words, "lawful heirs," "issue," "children" or "descendants" mentioned in the statute.

Moreover, this Court holds that the use by testator of the words "bodily issue" causes "the contrary to clearly appear" resulting in exclusion of this case from the effect of the statute. That is, the words, "bodily issue" so clearly exclude adopted children that the "contrary intent" (against inclusion of adopted children) clearly appears by the terms of the instrument.

The impossibility of recreating the physical process of procreation so as to change the physical origin of a person is an undebatable fact.

T.C.A. § 36–1–126(c) is, by its terms, a rule of construction. Where the words are plain and unambiguous, no construction is required, hence no "rule of construction" is needed or applicable. *National Bank of Commerce v. Greenberg,* supra; *Griffin v. Griffin,* 183 Tenn. 693, 195 S.W.2d 5 (1946); *Harris v. Bittikofer,* supra.

The foregoing is dispositive of the merits of this appeal rendering unnecessary any discussion of the constitutionality of the statute as applied to the present facts.

The judgment of the Trial Court is reversed, and the cause is remanded for entry of a judgment in conformity with this opinion. All costs of this cause, including costs of this appeal will be taxed against the trustee to be paid out of funds of the trust.

Reversed and remanded.

CANTRELL and KOCH, JJ., concur.