J. B. BELL et al.,

*v.*

DAWSON F. SHANNON et al.

367 S. W. 2d 761.

(*Nashville,* December Term, 1962.)

Opinion filed May 10, 1963.

30

JOHN D. SPROUSE, ALLEN M. O'BRIEN, Springfield, STEPHENSON, LACKEY & HOLMAN, Nashville, for appellants.

CECIL SIMS, Nashville, THOMAS PEPPER, Springfield, for appellees.

MR. JUSTICE WHITE delivered the opinion of the Court.

In this suit the complainants seek a construction of

the wills of John and Augusta McMurry. Their heirs at law are made defendants, together with the District Attorney General who was included as a necessary party because the action involved a charitable trust, and Robertson County, Tennessee whose interest will be made to appear in this opinion.

Thirteen of said heirs at law appeal from the action of the Chancellors in overruling their demurrer and assign errors.

The pleadings show that John McMurry was born and reared in Robertson County, Tennessee. During the later years of his life he lived in Houston, Harris County, Texas. On February 10, 1923, he executed his will which was probated in Harris County, Texas, on December 5, 1931.

Item 4 of this will provided that his residuary estate should be converted into cash and invested in United States Government Bonds and that the income therefrom should be paid to his wife during her lifetime.

By Item 5 of said will it was provided:

"After the death of my said wife, all the remainder of my estate, both real and personal, including the said Bonds and the income therefrom and the said residence in Springfield, Tenn., and also including any and all property, both real and personal, that I may hereafter acquire in any manner whatever, I do hereby give, devise and bequeath, in trust, to J. W. Brown, J. S. Brown, Chas. E. Bell, Chas. E. Bell, Jr., and Robert E. Shannon, all of Springfield, Tennessee, and their successors in office, for the purpose of erecting, operating and maintaining a Charity Hospital in the City

of Springfield, Tennessee, to be known as and called the 'John-Augusta-Jesse McMurry Charity Hospital'; and for the purpose of carrying out this trust I do hereby give and grant unto the said Trustees named and their successors in office, full power to take possession of, sell, trade, mortgage and otherwise dispose of my said property or any part thereof. Having great confidence in the integrity, good faith and ability of the said Trustees named and their successors in office as chosen by them or the survivors of them, I do hereby give them no directions whatever as to the erection and maintenance of the said Hospital, leaving it all to their good judgment and such rules and regulations as they and their successors in office may from time to time establish, except that I do direct them to erect and complete and put into operation the said Hospital as soon after my decease and the decease of my said wife as is possible and practicable.''

The testator and his wife held all of their property in the State of Texas. His wife exercising her rights under the Community Property Statutes of Texas took a one-half interest absolutely in the entire estate. The residue of the estate was turned over to the Trustees named in said will.

At the time John McMurry made his will and also at the date of his death in 1931, there was no hospital in existence in Springfield, or Robertson County, Tennessee. However, sometime after his death and in the year 1935 there was established in Springfield, pursuant to Chapter 477, Private Acts of the General Assembly, of Tennessee, for the year 1935, a hospital which was maintained and operated as such until the year 1955.

A new and modern hospital was built by Robertson County with Federal and State aid under the Hill-Burton Act, pursuant to Chapter 271 of the Private Acts of the General Assembly, Tennessee, for the year 1955. This Act expressly repealed the 1935 Act, and all the amendments thereto, insofar as the name applied to the hospital created under the 1955 Act.

The latter Act provides:

"That a non-profit Hospital to be known as the 'Jesse [Holman] Jones Memorial Hospital,' is hereby created and established for and in behalf of Robertson County, Tennessee, and for a board to govern and control the hospital and admissions of paying and indigent patients and for the County to support the hospital by levying taxes."

Mrs. John (Augusta) McMurry survived her husband for more than twenty-seven years after his death. She died testate in Springfield, Robertson County, Tennessee, on June 25, 1958. Her will was executed June 21, 1945, at which time there was in operation the Robertson County Hospital erected in 1935 as aforesaid. Upon the date of Mrs. McMurry's death on June 25, 1958, the Jesse-Holman-Jones Hospital, a new and modern hospital was fully completed and in operation and of course, Mrs. McMurry being a resident of that community knew that fact.

The provision of Mrs. McMurry's will of interest to the decision in this is in Section 3, to wit:

"It was the desire of my deceased husband, John Mc-Murry, and so expressed in his will, that after my death the principal of his estate should be devised to certain

trustees therein named for the purpose of erecting in Springfield, Tennessee, a charity hospital to be known as the 'JOHN-AUGUSTA-JESSE McMURRY CHARITY HOSPITAL', and it is also my desire to co-operate in carrying out his said wishes, and for the carrying out of said purpose, I hereby give, devise, and bequeath all of my property, real, personal and mixed and of whatever character and wherever located, in trust, to J. B. Bell and Thomas Pepper, both of Springfield, Tennessee, and their successors in trust, for the purpose of creating, operating, and maintaining the said 'JOHN-AUGUSTA-JESSE McMURRY CHARITY HOSPITAL', under the terms, conditions, and provisions hereinafter set forth.

"As soon after my death as possible, and after the trustees named herein have been placed in possession of my said property, said trustees shall set aside a fund of $90,000.00 to $180,000.00 as in their discretion may appear best, and out of said funds purchase grounds and construct a hospital building. Said Trustees shall invest and reinvest the remainder of my said estate in income bearing securities, preferably bonds or notes secured by mortgages upon real estate, if available, the income from said property to be devoted to the maintenance of said hospital and grounds, and said trustees shall have power to take possession of, sell, trade, mortgage or otherwise dispose of any of my property in order to accomplish said purposes. I direct that Thomas Pepper, one of the trustees herein named, shall look after all legal matters in connection with said trust estate and shall represent the trustees in all legal matters, so long as he is a trustee, for which

services he shall be paid a reasonable compensation in addition to his compensation as trustee.''

Mrs. McMurry further provided in Section Five of her Will:

''The trustees shall have power to adopt such rules and regulations as are necessary for the proper conduct and management of said hospital, in accordance with such well recognized practice in similar institutions, as they may deem practicable in the hospital to be erected by them. I further desire and direct that said trustees and their successors in trust, in so far as they legally may, shall cooperate with the trustees named in the will of my deceased husband, John McMurry, for the purpose of carrying out the plans for said hospital as expressed in his will.''

The will of Mrs. McMurry was probated in the County Court of Robertson County, in common form on July 22, 1958, and was later probated in solemn form on January 17, 1961. Neither of these actions of probate were contested.

All of the original trustees named by John McMurry as testamentary trustees in his will predeceased Mrs. McMurry except for Charles E. Bell, Jr.

Shortly after the death of Mrs. McMurry the Chancery Court of Robertson County, upon application of the one surviving trustee appointed by Mr. McMurry, appointed four of the present successor trustees. Thereafter, Mr. Charles E. Bell, Jr. resigned and a fifth trustee was appointed in his place and stead. Mrs. McMurry appointed J. B. Bell and Thomas Pepper to serve as her testamentary trustees, and they were also to serve as

executors of her will. These two gentlemen have been appointed by the Chancery Court to serve as two of the trustees under the will of John McMurry.

The five trustees under the will of Mr. McMurry have in their possession the sum of $186,251.50 plus accumulated interest. The two executors, J. B. Bell and Thomas Pepper, of the estate of Mrs. Augusta McMurry have on hand approximately $255,700.49 plus accumulated interest. They also hold real estate and certain personalty other than cash of the approximate value of $10,-000.00. The combined sum to be available from the two trusts for use in carrying out their terms is approximately $400,000.00.

The original bill alleges that the combined sums of the two estates would be entirely inadequate for the construction of an independent hospital building and for the capital necessary to produce income to operate such an independent hospital.

It is averred in the bill that a great deal of interest has been taken in Robertson County in the matter of these trusts after the death of Mrs. McMurry because there is a very urgent need for additional hospital facilities and services and additional hospital space and services in Springfield and Robertson County. After an investigation had been made by complainants and various conferences had been had with the county judge and with those persons interested in the community and business and agricultural life of the community, and after conference with members of the committees of the county court of Robertson County, a proposed contract was prepared jointly by counsel for complainants and representatives of Robertson County. On May 29, 1961,

at a special meeting of the County Court, called for that purpose, such contract between the Trustees and Robertson County was approved and entered into subject to certain conditions unnecessary to relate here.

Without reciting the contract in full it is sufficient to say that it provides that available funds of the two estates would be used to construct a wing or addition to the present Jesse-Holman-Jones Hospital now operated by Robertson County, located in Springfield, Tennessee, and the expense of constructing said wing would be about $300,000.00 and the equipping thereof would be approximately $50,000.00.

The original bill also averred that the present hospital is a charity hospital as contemplated in the wills of John and Augusta McMurry, and that the contract between the complainants and Robertson County is workable and fair and just, and would provide additional hospital facilities and services in the most efficient and practical manner and complies with the intent and purpose of said testator, John McMurry and the testatrix, Augusta McMurry.

The original bill further averred that the execution and performance of the contract would constitute full compliance with and complete performance and execution of the charitable trust set up in the last wills of Mr. and Mrs. McMurry for the purpose of erecting, operating and maintaining a charity hospital in Springfield, Tennessee, to be known as the John-Augusta-Jesse McMurry Charity Hospital.

It was further averred that if the Court concluded that the contract did not provide specific compliance with said charitable trust then the execution and performance of

said contract expresses and complies with the intent and purposes of the testators and trustees, and constitutes a permissible and legally valid deviation from the expressed terms of said trusts.

The contract between Robertson County and the Trustees under each of the wills provides generally that all of the money in the John McMurry estate would be used, if necessary, and up to $180,000.00 of the money in the Augusta McMurry estate for the building of a wing to the present Jesse-Jones Memorial Hospital. However, the John McMurry trust would be first exhausted. Any sum above $180,000.00 in the trust of the estate of Augusta McMurry is to be retained by her trustees and invested and reinvested with the income therefrom used for maintaining the proposed hospital wing.

It is also proposed in the contract that the wing is to be devoted to charity patients on a priority basis and then to paying patients when the facilities are not needed for charity patients. Section Three of said agreement provides:

"Robertson County agrees that said John-Augusta-Jesse McMurry Charity Hospital be erected upon the present hospital grounds owned by Robertson County, Tennessee herein referred to, attached to and accessible to the present Robertson County Hospital commonly known as the Jesse Holman Jones Memorial Hospital and Robertson County further agrees to operate and maintain said wing known as John-Augusta-Jesse McMurry Charity Hospital perpetually as an integral part of the Robertson County Hospital so as to afford medical care and hospital facilities and services to charity patients who are medically indi-

gent, said hospital facilities including but not limited to operating and recovery room, medical store rooms, nurses stations, kitchen facilities, the administrative and operational facilities, all of which shall be available to and furnished to charity patients in said John-Augusta-Jesse McMurry Charity Hospital. That said John-Augusta-Jesse McMurry Charity Hospital will be perpetually operated and maintained as a Charity Hospital according to the general intent as set out in said will of John McMurry, deceased, and in the will of the said Mrs. Augusta McMurry, deceased, by Robertson County, Tennessee, subject only to assistance from the income from the remaining trust funds under the will of Mrs. Augusta McMurry, deceased. Robertson County, Tennessee agrees to admit medically indigent patients on a priority basis to said John-Augusta-Jesse McMurry Charity Hospital where hospitalization is required for those who are in fact medically indigent and Robertson County, Tennessee, will be permitted to make customary charges to non-indigent patients admitted to said hospital where facilities are available and not required for indigent patients. Robertson County agrees to have an appropriate plaque placed upon said hospital building designating the same as the John-Augusta-Jesse McMurry Charity Hospital both on the outside of said hospital and on the inside so that indigent patients treated therein without charge will be cognizant that they receive their bounty from the late John and Augusta McMurry.

"This contract shall be binding on the parties only if approved by the County Court of Robertson County, Tennessee, and the Chancery Court of Robertson

County, Tennessee, within two years from the date hereof.''

The facts in the bill are not in dispute and we are asked to determine this matter on demurrer as the same was so determined in the lower court.

The Chancellor wrote a very scholarly opinion which will be referred to herein.

■ ■ The cardinal and basic rule in the construction of wills is that the Court shall seek to discover the intention of the testator, and will give effect to it unless it contravenes some rule of law or public policy. That intention is to be ascertained ''from the particular words used, from the context, and from the general scope and purpose of the instrument.'' *Hoggatt v. Clopton,* 142 Tenn. 184, 192, 193, 217 S.W. 657; *First American National Bank etc. v. Cole et al.,* 211 Tenn. 213, 364 S.W.2d 875.

■ Every word or clause of the will would be given effect if possible; and no part of the will will be rejected where it can be reconciled with other parts of the will and given reasonable effect. *McClure v. Keeling,* 163 Tenn. 251, 43 S.W.2d 383; *American National Bank & Trust Co. v. Mander,* 36 Tenn.App. 220, 226, 227, 253 S.W.2d 994.

■ It is true that the construction of a will requires a consideration of the facts and surrounding circumstances at the time of its execution and every word by the testator is presumed to have some meaning but the will must be and can take effect as if it had been executed immediately before death of the testator. T.C.A. sec. 32-301; *Nashville Trust Company v. Johnson, et al.,* 34

Tenn.App. 197, 236 S.W.2d 100; *American National Bank & Trust Company v. Mander,* 36 Tenn.App. 220, 253 S.W.2d 994.

The appellants have assigned fifteen grounds for error based upon the seven grounds set out in their demurrer. We shall dispose of these grounds in the order in which they appear in the record, but not seriatim.

■ In the first assignment of error it is claimed "the provision of the will of John McMurry, purporting to create a memorial for himself, his wife and his son was defeated by the act of his widow, Mrs. Augusta McMurry, in taking fifty per cent of the property involved under the Community Property Laws of the State of Texas, the effect of which was to leave an inadequate and different sum as intended and contemplated by John McMurry."

The will of John McMurry makes no mention of the amount of his estate or the cost of carrying out the trust. He was charged with knowledge of the laws of the State of Texas, and therefore he is charged with knowing that Texas was a Community Property State, and that his wife could, if she so desired, take one-half of his entire estate. This would not defeat and void the trust because no where in the will is any amount of money to be placed in the trust indicated by the testator.

Incidentally, upon his death his estate was valued at about $400,000.00. If Mrs. McMurry had accepted the provisions of the will and lived off of the income from the estate there would have remained in the estate upon her death a sum of about $400,000.00, or approximately the same amount as the total of their combined estates as of the date of her death.

It is a well known fact that the amount of an estate at the date of death may be quite different from the amount when the will was made, and unless the provisions of the will are made contingent upon the amount of the estate at the time of death, coupled with language amounting to a defeasance, there could be no failure of a trust created under the terms of such a will. The will of Mr. McMurry made no mention of the amount of his estate, and it may not have been known to him at the date of the execution of the will or if known the amount may have been more or even less at the date of his death. The first assignment is therefore overruled.

The second assignment based upon the ground Number Two of the demurrer is "the provisions of the will of Mrs. Augusta McMurry purporting to create a memorial to herself, her husband and her deceased son with terms and conditions differing from the provisions in the will of her deceased husband attempts to create something in the nature of a joint trust or partnership arrangement and such an arrangement is foreign to the laws of the State of Tennessee and was not contemplated by her deceased husband, and is ineffectual to create a valid Charitable Trust."

From reading the wills of Mr. and Mrs. McMurry it is plain and obvious that they wished to create a trust for the construction, erection and maintenance of a hospital in Robertson County, Tennessee, and in order that future generations might know of the generosity of the donors they wished to have it named in their honor. This is commendable and laudable both as an object of charity and as a desire on their part to leave something that would live after them.

Man's ambition is poor indeed if he does not want to accomplish some act or do something in life that will live after him.

Section 179.2 of Scott on Trusts, 1939 Edition Vol. 3 the text although dealing with private trusts has this to say:

"It would seem that the court may under proper circumstances permit two trusts to be administered as one."

In the State of Pennsylvania there are statutory provisions permitting two trusts when approved by the Court to be administered as one. These provisions relate to both private and charitable trusts. In this State we have no similar statutory provisions. However, we believe that a Court of competent jurisdiction in this State upon application of proper parties may direct that two or more charitable trusts created for substantially the same purposes, as here, be administered as one trust provided that Court first determines that such administration may be more effectively administered and provided further that it finds that such combining will not violate any of the express provisions in the instruments creating the trusts. This to us seems to be a reasonable and equitable solution to the problem confronting the Court in the instant case.

The Chancellor was of the opinion that:

"the primary intent and purpose of Mrs. Augusta McMurry was to make sure that the wishes of her husband were carried out and that her intent and purpose was that her estate be joined with that of her husband for the purpose of providing adequate hospital facili-

ties for charity patients in Springfield and Robertson County. To me this intention is clear and constitutes a valid charitable trust. * * *, * * *.

"* * * under the language of both wills the trustees were given wide latitude in the use of their discretion in the construction, management and control of the trust. Relying upon the general principle that where the purpose and intention is clear and the object is the establishment of a charitable trust, the intention should be carried out and not defeated by technicalities, I can see no objection to achieving that end by two sets of trustees who agree to joint action which does carry out that intention."

We approve these conclusions of the Chancellor. To us it is equally obvious that it was the purpose and intent of Mr. McMurry that the corpus of his estate, whatever the amount, should be used to carry out the terms of the trust created in his will upon the death of his wife.

The will of Mr. McMurry says that he had great confidence in the integrity, good faith and ability of said trustees and their successors and he gave them no direction whatever as to the erection and maintenance of the hospital "leaving it all to their good judgment and such rules and regulations as they and their successors in office may from time to time establish, except that I do direct them to erect and complete and put into operation the said Hospital as soon after my decease and the decease of my said wife as is possible and practicable."

The will of Mrs. McMurry sets out the desires of her deceased husband and expresses as her will that after her death the principal of her estate be devised to certain trustees therein named for the purpose of erecting in

Springfield, Tennessee a Charity Hospital and "it is also my desire to cooperate in carrying out his (Mr. McMurry) said wishes, and for the carrying out of said purposes, I hereby give, devise, and bequeath," etc. to the trustees named in her will the property as therein set out. At another point in her will in expressing her desire to see that her husband's wishes be carried out she said:

"I further desire and direct that said trustees and their successors in trust, in so far as they legally may, shall cooperate with the trustees named in the will of my deceased husband, John McMurry, for the purpose of carrying out the plans for said hospital as expressed in his will."

We do not believe that language more expressive of the desire of Mrs. McMurry could have been employed. In our opinion it would be offensive to the intention of both settlors of these trusts to defeat their obvious purpose by sustaining assignment No. two. Therefore, it is overruled.

The third assignment of error is that "the trusts, and each of them, must fail because, as admitted in the bill, the sum of money provided in neither will, nor the combined sum, is adequate to construct and maintain a hospital as contemplated by the testators."

Whether or not there is sufficient money would depend upon the size and type of hospital to be constructed and operated. It is possible that an exceedingly small hospital could be built and could be operated with the amount in these two trust funds, thereby accommodating a limited number of charity patients. However, this, in our opinion, would not meet the desires and purposes of Mr. and Mrs. McMurry. It seems to us that each of them

expressed a primary purpose, desire and intent to be of assistance to all indigent patients who might come to the hospital seeking medical care and aid. The Chancellor said:—"I do not think the McMurrys intended to create a useless memorial (i. e. an inadequate facility) and that the language used in the wills clearly supports this view."

The trustees filed the bill herein for the purpose of securing the approval of the Court to use funds of the trusts to erect a charity wing to the new and modern Robertson County, Tennessee Hospital. In a contract entered into between them and the County of Robertson the Trustees dictate the terms under which said facility will be operated in perpetuity. They are making sure that "such rules and regulations as are necessary for the proper conduct and management of said hospital, in accordance with such well recognized practices in similar cases" will be carried out.

The provisions under which the rules and regulations for admission of charity patients to the facility are contained in Section 3 of the contract, which reads:

"Robertson County agrees that said John-Augusta-Jesse McMurry Charity Hospital be erected upon the present hospital grounds owned by Robertson County, Tennessee herein referred to, attached to and accessible to the present Robertson County Hospital commonly known as the Jesse Holman Jones Memorial Hospital and Robertson County further agrees to operate and maintain said wing known as John-Augusta-Jesse McMurry Charity Hospital perpetually as an integral part of the Robertson County Hospital so as to afford medical care and hospital facilities and services to

charity patients who are medically indigent, said hospital facilities including but not limited to operating and recovery room, medical store rooms, nurses stations, kitchen facilities, and the administrative and operational facilities, all of which shall be available to and furnished to charity patients in said John-Augusta-Jesse McMurry Charity Hospital. That said John-Augusta-Jesse McMurry Charity Hospital will be perpetually operated and maintained as a Charity Hospital according to the general intent as set out in said will of John McMurry, deceased, and in the will of the said Mrs. Augusta McMurry, deceased, by Robertson County, Tennessee, subject only to assistance from the income from the remaining trust funds under the will of Mrs. Augusta McMurry, deceased. Robertson County, Tennessee agrees to admit medically indigent patients on a priority basis to said John-Augusta-Jesse McMurry Charity Hospital where hospitalization is required for those who are in fact medically indigent and Robertson County, Tennessee, will be permitted to make customary charges to nonindigent patients admitted to said hospital where facilities are available and not required for indigent patients. Robertson County agrees to have an appropriate plaque placed upon said hospital building designating the same as the John-Augusta-Jesse McMurry Charity Hospital both on the outside of said hospital and on the inside so that indigent patients treated therein without charge will be cognizant that they receive their bounty from the late John and Augusta McMurry.

"This contract shall be binding on the parties only if approved by the County Court of Robertson County,

Tennessee, and the Chancery Court of Robertson County, Tennessee, within two years from the date hereof.''

The trustees contend that if the plan, above indicated, is carried out that the purpose and intention of the McMurrys will be complied with in a practicable and workable manner so as to give assistance to the greatest number of charity patients possible.

The defendants insist that this plan is an attempt on the part of the trustees to divert the trust funds to a different purpose than that intended and anticipated by Mr. and Mrs. McMurry and that the ratification of the plan would constitute the application of the Cy Pres doctrine which has been rejected by our Court in many cases. With this we do not agree.

██ It is a general rule of law that the purpose of a trust cannot be changed by the trustees or by the Courts, but the manner or method of the accomplishment of the express intent and purpose of a trust may be decreed in a proper proceeding. *Goodman v. State,* 49 Tenn.App. 96, 351 S.W.2d 399, *King College v. Anderson,* 148 Tenn. 328, 255 S.W. 374, *Henshaw v. Flennkien,* 183 Tenn. 232, 233, 191 S.W.2d 541, 168 A.L.R. 1010.

We believe that the purpose of the McMurrys is being carried out and, therefore, no change is being effected by the Trustees or by the Court.

The case of *Ratto v. Nashville Trust Company,* 178 Tenn. 457, 159 S.W.2d 88, 141 A.L.R. 341, held that trusts for charitable uses and purposes are highly favored by Court of equity and will be upheld.

It was also quoted with approval from the case of *Dickson v. Montgomery,* 31 Tenn. 348, 364, where the

Court said:—''Charities have been peculiarly favored by the courts, from the earliest period of history of our law. Donations of this sort are usually made, for the advancement of education, morality, and religion, and for the relief of the indigent, helpless, and disabled objects which must meet with favor in every civilized and christian community. Hence, devises and gifts to charitable uses, have been sustained, in cases where, if the trust had been for other objects, they would have been void for uncertainty.''

The third assignment is, therefore, overruled.

The fourth assignment is ''that the contract between the trustees and Robertson County shows on its face that the arrangements therein provided for were not contemplated by either of the testators and in a number of respects contrary to the directions contained in said will.''

■ The trustees admit that no express authority was conferred upon them by the testators to enter into such an agreement with Robertson County, but they contend that their actions are within the general contemplation and overall purpose of the testators in that they desired to provide a place where indigent people needing medical care might receive such care without cost to them.

The trustees were faced with the problem of abandoning the duties and obligations of the trust and thereby defeating the intention of the testator or working out some plan or method which met the general requirements and intentions and purposes of Mr. and Mrs. McMurry. We believe they are proceeding in a proper, lawful and just manner and responsive to the desires of the McMurrys.

In the case of *Jourolmon v. Massengill,* 86 Tenn. 81, the Court held that a trustee takes and retains that exact quantity of interest, and no more, in the trust property, both as to the extent and duration, which is requisite for proper and efficient execution of the power and duties conferred upon it and to effectuate the purposes of the trust.

The purposes of these trusts was to provide for the erection and construction of a charity hospital in Robertson County, Tennessee, and to this end the trustees were directed to expend all necessary funds therefor.

■ ■ It has been held that when authorized, either expressly or impliedly, the trustee may exhaust the funds donated for the purpose of a trust. 14 C.J.S. Charities sec. 47, page 503, citing *Atchison v. United Presbyterian Board of Education,* 266 Pa. 47, 109 A. 597.

The fourth assignment is, therefore, overruled.

The fifth assignment is to the effect that the complainants ask the Court to apply what is known as the Cy Pres doctrine which has been repeatedly rejected by the Courts of Tennessee. We find this assignment to be without merit for the reasons following.

■ The trustees are undertaking to apply the funds for the exact purpose and for the exact charitable uses as directed by the testators. The charitable uses or purposes expressed in both wills is to provide hospitalization to the indigent ill and it is our opinion that this object and purpose is to be fully carried out in the construction and operation of the wing to the Jesse Holman Jones Hospital at Springfield in the way and manner set out in the contract between the trustees and Robertson County.

In our opinion there is no fundamental change of purpose in building and operating the wing instead of constructing and operating a separate hospital. There is only a change in the details of the operation of the trusts, leaving the purposes perfectly intact. A hospital is defined in Black's Law Dictionary Fourth Edition as being ''an institution for the reception and care of sick, wounded, infirm or aged persons * * *'' Webster's Third New International Dictionary defines a hospital as being ''an institution or place where sick or injured persons are given medical or surgical care.'' This is the exact use to which the wing is to be put.

Under the contract proposed to be entered into between the trustees and Robertson County, it is provided as above set out that said wing be erected upon the present hospital grounds owned by Robertson County and attached to and accessible to the present Robertson County Hospital. The County agrees to operate and maintain said wing known as John-Augusta-Jesse McMurry Charity Hospital perpetually and an integral part of the Robertson County Hospital so as to afford medical care and hospital facilities and services to charity patients who are medically indigent and that said charity hospital will be perpetually operated and maintained as a charity hospital according to the general intent as set out in said wills.

It seems that the construction of the wing as proposed would meet the general overall purposes and intentions of the testators in that a charity hospital would be provided and maintained and that their names and the name of their son would be perpetually memorialized. The fact that a charitable institution bears the name of a person or persons will not rob it of its status as a charitable

institution. Examples of similar situations in this State and throughout the country are too numerous to mention.

Therefore, the fifth and sixth assignments of error are overruled.

The seventh assignment is overruled for the reasons set out in the overruling of the third assignment.

In the case of *Heiskell v Chickasaw Lodge,* 87 Tenn. 668, 677, 11 S.W. 825, 827, 4 L.R.A. 699 it was said:

"The following principles are settled in Tennessee:

"First, that trusts for charitable uses should be favored by courts of equity;

"Second, that where the object of the charity is definite, and it is to be administered by trustees, it will be sustained:

"Third, that although the objects may be too indefinite for a court of chancery to undertake to administer it, yet, if a trustee capable of taking the trust be named and clothed with the necessary powers and discretion for carrying out the charity, it will be upheld."

The above statement was quoted with approval in the case of *Eledge, et al. v. Dixon, et al.,* 193 Tenn. 654, 664, 249 S.W.2d 886. This case also quoted with approval the following statement taken from *Johnson v. Johnson,* 92 Tenn. 559, 566, 23 S.W. 114, 116, 22 L.R.A. 179 as follows:

"Nevertheless, the courts will sustain a charity when the plan and scheme for its management is left to the discretion of trustees, and will, if necessary, formulate a scheme for the conduct of the charity, or uphold the

plan and scheme which the trustees, in their discretion, may adopt and formulate, and prevent any interference therewith."

In the case of *Henshaw, et al. v. Flennikin, et al.,* 183 Tenn. 232, 245, 191 S.W.2d 541, 547, 168 A.L.R. 1010 the Court said:—"* * * that the means or details prescribed for their administration should be subject to be molded so as to meet any exigency which may be disclosed by a change of circumstances, and to relieve the trust from a condition which imperils or endangers the charity itself or the funds provided for its endowment and maintenance."

In the same case the Court at page 240, 191 S.W.2d at page 544, quoted with approval from Scott on Trusts, Vol. 3, Section 381, as follows:

"The power of a court of equity to permit or direct a deviation from the terms of the trust is at least as extensive in the case of charitable trusts as it is in the case of private trusts. The courts will direct or permit a deviation from the terms of the trust where compliance is impossible or illegal, or where owing to circumstances not known to the settlor and not anticipated by him compliance would defeat or substantially impair the accomplishment of the purposes of the trust."

We are definitely of the opinion that the trustees by their action as hereinabove indicated are proposing to carry out the general intent and overall purpose of the testators, that is, they are providing for the erection and construction of a place or building where sick or indigent persons are given medical or surgical care and on the basis of charity. This building is to be known as the John-Augusta-Jesse McMurry Charity Hospital and it is

to be operated in perpetuity by Robertson County in accordance with the agreement which is filed as an exhibit to the bill in this case.

We believe that we have now disposed of all the points raised in the demurrer and by the assignments of error which we have found and now find to be without merit.

We, therefore, affirm the action of the Chancellor in giving his approval to the efforts of the Trustees to enter into this contract in question with Robertson County. We are of the opinion that the Trustees in so doing are making substantial compliance with the desires and wishes of Mr. and Mrs. McMurry to establish, erect and maintain a hospital primarily for charitable purposes and, therefore, the trust contained in each will constitutes a valid charitable trust.

This case is remanded to the Chancellor for further proceedings consistent with this opinion and for the purpose of fixing and allowing fees for the solicitors of record for the necessary and substantial services which they have rendered in this case. (See *Vanderbilt University v. Mitchell,* 162 Tenn. 217, 36 S.W.2d 83.) The fees so allowed will be taxed as a part of the cost in this cause.