IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 8, 2012 Session

**IN RE: PAULINE MARTIN, DECEASED**

**Appeal from the Chancery Court for Hancock County**
**No. 09-1065       Thomas R. Frierson, II, Chancellor**

**No. E2011-02693-COA-R3-CV-FILED-JANUARY 10, 2013**

Edith M. Ramsey and Mary E. Horton filed a petition seeking a declaratory judgment with regard to the interpretation of the Last Will and Testament of Pauline Martin ("the Will"). Specifically, Ms. Ramsey and Ms. Horton sought an order establishing the location and width of a right-of-way granted in the Will. After a trial, the Trial Court entered its judgment on October 11, 2011 finding and holding, *inter alia*, that the right-of-way referenced in the Will was a farm road with a width of twelve feet as shown on an August 25, 2009 survey. Charles E. Martin, another beneficiary under the Will, appeals to this Court. We find and hold that the right-of-way referenced in the Will is not the farm road, but is what is referred to as the Ramsey right-of-way as shown on the August 25, 2009 survey, and we reverse the Trial Court's judgment as to the location. We affirm the remainder of the Trial Court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Reversed, in part; Affirmed, in part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., P.J., and JOHN W. MCCLARTY, J., joined.

David H. Stanifer and Lindsey C. Cadle, Tazewell, Tennessee, for the appellant, Charles Edward Martin.

Floyd W. Rhea, Sneedville, Tennessee, for the appellees, Edith M. Ramsey and Mary E. Horton.

# OPINION

## Background

Pauline Martin died testate in January of 2009 seized of personal property and real property located in Sneedville, Tennessee. The Will was admitted to probate and letters testamentary were issued to Edith M. Ramsey and Mary E. Horton as co-executrixes of the Estate of Pauline Martin. Ms. Ramsey and Ms. Horton then filed a Petition for Declaratory Judgment alleging, in part, that a dispute had arisen among the beneficiaries under the Will as to the right-of-way referenced in the Will.

In pertinent part, the Will states:

> I do hereby give, and devise to **EDITH M. RAMSEY and CHARLES EDWARD MARTIN** the homeplace and being strip No. 1. I give, and devise to **MARY E. HORTON,** the middle strip and being strip No. 2. I give, and devise to **BETTY A. BEELER and DENNIS E. MARTIN** the property next to the Moore place, and being strip No. 3. It shall be understood that each strip has a road right-of-way, especially strip No. 3 which is behind the Mulberry Creek. Where Jerry Ramsey lives, that part belongs to him because he has a Warranty Deed for that we made him long ago.

The case proceeded to trial without a jury. A survey prepared by Murrell Weems and dated August 25, 2009 ("the Survey") was introduced as an exhibit at trial. The Survey depicts strips No. 1, 2, and 3 as devised in the Will and also shows the two alleged right-of-ways which are known as the "farm road" and the "Ramsey right-of-way." An excerpt of the Survey has been reproduced as Exhibit A to this Opinion. For purposes of clarity, we have added "Ramsey right-of-way" and "farm road" to Exhibit A.

A November 7, 1985 Warranty Deed from Pauline Martin to Jerry D. Ramsey and Deanna M. Ramsey ("Ramsey Deed") also was introduced as an exhibit at trial. The Ramsey Deed is the Warranty Deed which is referenced in the Will. In pertinent part, the Ramsey Deed provides: "It is further understood that there is a twelve (12') foot right-of-way from Mulberry Gap Road to the property owned and joining this property on the back side belonging to Pauline Martin." This language created the right-of-way known as the Ramsey right-of-way.

The Trial Court entered its Judgment on October 11, 2011 finding and holding, *inter alia*, that the road right-of-way referenced in the Will is the farm road as shown on the

Survey, and that the right-of-way has a width of twelve feet. Charles E. Martin appeals to this Court.

**Discussion**

Although not stated exactly as such, Mr. Martin raises one issue on appeal: whether the Trial Court erred in interpreting the Will by finding that the right-of-way was the farm road rather than the Ramsey right-of-way.

To begin, we note that the record on appeal does not contain a transcript of the trial. The record instead contains a Statement of the Evidence[1]. The Statement of the Evidence is extremely brief and not particularly helpful. Given our standard of review for interpretation of a will, we, however, are able to address the issue raised on appeal despite the paucity of the Statement of the Evidence.

This Court discussed the standard of review to be applied in cases involving the construction of a will in *Horadam v. Stewart* stating:

> The construction of a will is a question of law for the court; therefore, we review the trial court's conclusions of law *de novo* affording them no presumption of correctness. *In re Estate of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005). In cases involving the construction of wills, the cardinal rule "is that the court shall seek to discover the intention of the testator, and will give effect to [that intent] unless it contravenes some rule of law or public policy." *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992) (quoting *Bell v. Shannon*, 212 Tenn. 28, 367 S.W.2d 761, 766 (Tenn. 1963)); *see also In re Crowell*, 154 S.W.3d 556, 559 (Tenn. Ct. App. 2004); *McBride v. Sumrow*, 181 S.W.3d 666, 669 (Tenn. Ct. App. 2005). Furthermore, in will construction cases, we rely on the language of the instrument to determine the testator's intent:
>
> > [T]he testator's intention must be ascertained from "that which he has written" in the will, and not from what he "may be supposed to have intended to do," and extrinsic evidence of the condition, situation and surroundings of the testator himself may

---

[1]The Trial Court approved the Statement of the Evidence as modified by testimony set out in Ms. Ramsey's and Ms. Horton's Objection to the Statement of the Evidence. When we refer to the Statement of the Evidence in this Opinion, the reference encompasses the Statement of the Evidence as so modified and approved by the Trial Court.

be considered only as aids in the interpretation of the language used by the testator, and "the testator's intention must ultimately be determined from the language of the instrument weighed in the light of the testator's surroundings, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention not justified by the language of the writing itself."

*In re Cromwell*, 154 S.W.3d at 559 (quoting *Nichols v. Todd*, 20 Tenn. App. 564, 101 S.W.2d 486, 490 (Tenn. Ct. App. 1936)); *see also* Pritchard on Wills §§ 384, 387, 388, and 409 (2d. ed.). Our Supreme Court has said that when ascertaining the testator's intent by construing the language used in a will, we must consider the entire will as a whole. *In re Estate of Vincent*, 98 S.W.3d 146, 150 (Tenn. 2003).

*Horadam v. Stewart*, M2007-00046-COA-R3-CV, 2008 Tenn. App. LEXIS 601, at **13-15 (Tenn. Ct. App. Oct. 6, 2008), *Rule 11 appl. denied April 27, 2009*. Moreover, "[a] will should be construed to give effect to every word and clause contained therein." *Presley v. Hanks*, 782 S.W.2d 482, 489 (Tenn. Ct. App. 1989) (citing *Bell v. Shannon*, 212 Tenn. 28, 367 S.W.2d 761 (1963)).

We begin our analysis by noting that the Will contains a latent ambiguity. While "[g]enerally, parol or extrinsic evidence may not be used to vary, contradict, or add to unambiguous language used in a will," such evidence may be used if the will contains a latent ambiguity. *Horadam*, 2008 Tenn. App. LEXIS 601, at *15. As this Court explained in *Horadam*:

An ambiguity is "[a]n uncertainty of meaning or intention, as in a contractual term or statutory provision."… Our courts have routinely held that a latent ambiguity exists when "the equivocality of expression or obscurity of intention does not arise from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer[.]" Moreover, a latent ambiguity is "susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of."

Simply defined, a latent ambiguity is "[a]n ambiguity that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." Latent

-4-

ambiguities most often arise in relation to the person and the thing identified in the document and "exist when the words of a written instrument are plain and intelligible, yet have capability of multiple meanings given extraneous facts." For example, a latent ambiguity regarding the subject or thing would arise if a testator devises a parcel of his property "X" but has two parcels, "North X" and "South X." Extrinsic evidence is then admissible to identify the property or person the testator intended to describe.

Alternatively, a patent ambiguity exists when the ambiguity results from the language or wording in the instrument. A patent ambiguity is one that clearly appears on the face of a document, "[p]roduced by the uncertainty, contradictoriness, or deficiency of the language of an instrument, so that no discovery of facts, or proof of declarations, can restore the doubtful … sense without adding ideas which the actual words will not themselves sustain."

*Horadam*, 2008 Tenn App. LEXIS 601, at **15-19 (citations omitted) (italics in original omitted).

The Will contains a latent ambiguity because it devises a road right-of-way and, as shown on the Survey, there are two potential road right-of-ways. Thus, a latent ambiguity arises not "from the words themselves, but from the ambiguous state of extrinsic circumstances to which the words of the instrument refer[.]" *Id*. at *17. This ambiguity is "susceptible of explanation by the mere development of extraneous facts, without altering or adding to the written language, or requiring more to be understood thereby than will fairly comport with the ordinary or legal sense of the words and phrases made use of." *Id*. (quoting *Burchfiel v. First United Methodist Church of Sevierville*, 933 S.W.2d 481, 482 (Tenn. Ct. App. 1996)). As such, we find that the Trial Court did not err in allowing parol evidence for the explanation of this latent ambiguity.

We turn now to a consideration of whether the Trial Court erred in finding that the testatrix's intent was to devise the farm road as the road right-of-way. If a testatrix's intent is determined, in part, through extrinsic evidence, we review the trial court's findings of fact *de novo* with a presumption of correctness. *In re: Estate of Luther Gaston Garrett*, No. M1999-01282-COA-R3-CV, 2001 Tenn. App. LEXIS 764 (Tenn. Ct. App. Oct. 12, 2001), *no appl. perm. appeal filed*.

We, however, need not look far in order to clarify and interpret the latent ambiguity in the Will as the Will itself provides direction. After talking about the road right-of-way and "especially strip No. 3," the Will references the Ramsey Deed in which the testatrix years earlier had specifically granted a right-of-way, i.e., the Ramsey right-of-way.

If we adopted the Trial Court's interpretation, the language in the Will referring to the Ramsey Deed would be rendered superfluous and, as "[a] will should be construed to give effect to every word and clause contained therein," such an interpretation cannot stand. *Presley*, 782 S.W.2d at 489.

Furthermore, under the Trial Court's interpretation, strip No. 2 would be granted not one, but two road right-of-ways. The Will clearly and specifically provides that "each strip has a road right-of-way," in the singular. Additionally, we note that nothing in the Will compels the interpretation that strips No. 1, No. 2, and No. 3 must all share in the same right-of-way. The Will simply provides that each strip shall have a right-of-way.

When interpreting a will, it is not the job of the trial courts or of this Court to determine the outcome that best suits the beneficiaries. Rather, we must discover the intention of the testatrix from that which is written in the will while giving effect to every word and clause within the will. Interpreting the Will in light of this standard leads to the conclusion that the testatrix intended that the road right-of-way devised in the Will is the Ramsey right-of-way. This interpretation of the Will results in each of the three strips having a single road right-of-way. We, therefore, reverse that portion of the Trial Court's judgment holding that the location of the right-of-way is the farm road, and hold that the location of the right-of-way is the Ramsey right-of-way as depicted on the Survey. We affirm the remainder of the Trial Court's judgment.

## Conclusion

The judgment of the Trial Court holding that the location of the right-of-way is the farm road is reversed. The location of the right-of-way is the Ramsey right-of-way as depicted on the Survey. The judgment of the Trial Court is affirmed in all other respects, and this cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed against the appellees, Edith M. Ramsey and Mary E. Horton.

_____

D. MICHAEL SWINEY, JUDGE



**EXHIBIT A**