# IN THE COURT OF APPEALS OF TENNESSEE
## AT  KNOXVILLE
March 10, 2015 Session

## IN RE: ESTATE OF MARTHA B. SCHUBERT

**Appeal from the Chancery Court for Knox County**
**No. 65462-1          John F. Weaver, Chancellor**

_____

### No. E2014-01754-COA-R3-CV-FILED-JULY 15, 2015

_____

This case involves the construction of the Last Will and Testament of Martha B. Schubert ("the Will").  The Chancery Court for Knox County ("the Trial Court") found and held that Martha B. Schubert ("Deceased") intended the real property described in the second paragraph of Article IV of the Will to be the two parcels of real property owned by Deceased located on Cherokee Boulevard and that these properties vested immediately in John Schubert upon Deceased's death.  John Schubert appeals raising issues regarding whether the Trial Court erred in finding and holding that the second paragraph of Article IV of the Will referred to the two properties on Cherokee Boulevard and that these properties vested in John Schubert immediately upon Deceased's death.  We find and hold that the Trial Court did not err in finding and holding that it was Deceased's intent that the second paragraph of Article IV of the Will describe the two Cherokee Boulevard properties.  We find and hold, however, that these properties did not vest in John Schubert immediately upon Deceased's death because the Will also contains specific language which, pursuant to Tenn. Code Ann. § 31-2-103, directed that the real property be administered as part of Deceased's estate.  We, therefore, affirm, in part, and reverse, in part.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed, in part; Reversed, in part; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which JOHN W. MCCLARTY, and THOMAS R. FRIERSON, II, JJ., joined.

John A. Lucas and Lane E. McCarty, Knoxville, Tennessee, for the appellant, John Clinton Schubert.

Thomas N. McAdams and Margo J. Maxwell, Knoxville, Tennessee, for the appellee, Morgan Alexander Schubert, Jr.

James S. Tipton and Mack A. Gentry, Knoxville, Tennessee, for the appellee, Richard L. Hollow, Executor of the Estate of Martha B. Schubert.

## OPINION

## Background

Deceased died in August of 2006.[1] The Will was admitted to probate and Richard L. Hollow was appointed as the Personal Representative of Deceased's estate. Mr. Hollow filed a petition seeking construction of certain portions of the Will. John C. Schubert ("John Schubert") and Morgan Alexander Schubert, Jr. ("Alex Schubert") each filed a response to Mr. Hollow's petition.

The Will provides, in pertinent part:

> I declare that my husband, Morgan Alexander Schubert, is deceased, and that I have two children, namely, Morgan Alexander Schubert, Jr. and John Clinton Schubert.

\* \* \*

## IV.
## DISTRIBUTION OF ESTATE

> All of the residue of my property, real, person and mixed, of whatsoever kind and wheresoever situated, I give, devise and bequeath as follows:
>
> 50% to my son, Morgan Alexander Schubert, Jr.
> 50% to my son, John Clinton Schubert.
>
> It is my specific will and request that all real estate which I own or may own at the date of my death located on Cherokee Boulevard and running to Wilani Drive to the rear, including the Dan Mayo property, be given to my son, John Clinton Schubert, as part of his share of my estate.

\* \* \*

---

[1] The Certificate of Death in the record on appeal shows Deceased's name as "Martha Ann Schubert." Deceased's Last Will and Testament, however, states that her name is "MARTHA B. SCHUBERT," and Deceased executed the will as "Martha B. Schubert." The case now before us is styled "In re: Estate of Martha B. Schubert."

-2-

# V.
## DIVISION OF ESTATE

The Testatrix recognizes and by this instrument declares that she is aware that a substantial portion of her estate may include real estate and other assets which cannot be divided as easily as cash, stocks, bonds or securities. In recognition of this fact, it is the will of the Testatrix that her estate, including real estate, be divided between her heirs as hereinabove set forth. It is her will and wish that her heirs agree as to the division of the assets of her estate. It shall be the duty of the Executor to ensure that an equitable division has taken place and, to that end, the Executor is granted the authority to cause appraisals and other evaluations of estate assets to take place to ensure, insofar as possible, the equitable division herein requested. The Executor is also granted the express authority, in addition to other authorities given to him by this instrument and by law, to exercise, in his discretion, veto power of any plan of distribution if, in his sole discretion, it appears to be not in conformity with the wishes of the Testatrix as set forth in this document. If, in the sole discretion of the Executor, it appears that the ability of the heirs to fairly and equitable [sic] divide the estate assets by agreement does not exist or has been lost, then the Executor, in his sole discretion, shall order the assets of the estate liquidated in an orderly fashion and the proceeds distributed in accordance with the wishes of the Testatrix as expressed in this document.

The Trial Court referred the case to the Clerk and Master, who held a hearing and heard evidence in January of 2013. Richard L. Hollow testified that he is an attorney who is married to Deceased's sister. Mr. Hollow prepared the Will.

At the time of her death Deceased owned two lots of real property fronting on Cherokee Boulevard ("Cherokee Lots") in Knoxville, Tennessee, one of which was referred to as the Dan Mayo property.[2] The other of the Cherokee Lots contained Deceased's house. Deceased's residence was located at 1951 Cherokee Boulevard and the Dan Mayo property was located at 1965 Cherokee Boulevard. Deceased did not own any other property that either fronted on Cherokee Boulevard or had a Cherokee Boulevard address.

Deceased also had owned at one time prior to making the Will three lots contiguous to the Cherokee Lots, which extended from the boundaries of the Cherokee

---

[2] A rough diagram is attached to this Opinion showing where the various parcels of real property owned by Deceased are located in relation to one another.

Lots all the way to Wilani Drive ("Wilani Lots"). The three Wilani Lots are the only lots Deceased owned on Wilani Drive. Mr. Hollow was not aware at the time Deceased executed the Will that Deceased previously had conveyed the Wilani Lots to John Schubert.

Mr. Hollow testified that he had a conversation with John Schubert after Deceased's death about the Cherokee Lots, and stated:

> I had spoken to Mr. John Schubert, who was concerned at that point, if I remember correctly, about the title to the property. He wanted to be assured that the property would be his.
>
> I assured him at that time that as far as I was concerned there was never a question in my mind but that property was his. That was the intent of his mother from the day we first discussed her property, that that was to be John's property.
>
> But I did qualify that by saying, and this was before the inheritance tax had been paid, I did qualify that by saying that there was the possibility that if for some unforeseen reason assets of the estate available to pay the tax were insufficient, the government could reach that property.

The estate taxes were paid after Mr. Hollow and John Schubert had that conversation.

Mr. Hollow testified that in his opinion the Cherokee Lots are the real properties described in the second paragraph of Article IV of the Will. Mr. Hollow testified that he believes that the Cherokee Lots vested in John Schubert immediately upon the death of Deceased pursuant to statute. Despite this belief Mr. Hollow had two personal representative deeds for the Cherokee Lots prepared in May of 2008 deeding the properties to John Schubert. Mr. Hollow had these personal representative deeds prepared at John Schubert's request. Mr. Hollow testified that those deeds were tendered to John Schubert, but were not accepted and were not recorded. When asked why they were not recorded, Mr. Hollow stated: "It was my impression based upon information that we had exchanged during the meetings that we held during a period of the administration of the estate that the property vested in [John Schubert] at the date of death."

After the hearing, the Clerk and Master filed the Master's Report on February 12, 2013. In pertinent part, the Master's Report stated:

(1)  That Article IV of the Last Will and Testament of Martha B. Schubert shall be construed to immediately vest the title to the real property owned by the decedent designated as 1951 Cherokee Boulevard and 1965 Cherokee Boulevard into John Clinton Schubert at the time of the decedent's death and shall be considered as part of his share of the decedent's estate devised under the will;

(2)  That since the ability of the will beneficiaries, Morgan Alexander Schubert, Jr. and John Clinton Schubert, to fairly and equitably divide the estate assets by agreement does not exist and has been lost, the executor, Richard L. Hollow, is hereby authorized to exercise the powers granted to him under Paragraph V of the decedent's will for the sale of assets of the estate, except the above real property on Cherokee Boulevard, and to distribute the proceeds in accordance with the wishes of the decedent as expressed in said will; . . . .

John Schubert filed objections to the Master's Report.  Alex Schubert filed a motion for adoption and approval of the Master's Report.

The Trial Court heard the objections to the Master's Report and entered its Memorandum Opinion and Order on July 24, 2014 overruling the objections and adopting and approving the Master's Report after finding and holding, *inter alia*:

The decedent died on August 31, 2006.  She executed her last will and testament on June 5, 2002.  Prior to October, 2001, the decedent owned two lots fronting Cherokee Boulevard and three additional lots contiguous to the rear boundaries of the two lots fronting Cherokee Boulevard.  The three additional lots, which are contiguous to the two Cherokee Boulevard lots, extend to and front Wilani Drive. . . .

In October 2001, the decedent conveyed the three lots on Wilani Drive to her son John Schubert.  Thus, the devisee, John Schubert, argues that there was no property covered by the above devise because the two remaining lots fronting Cherokee Boulevard do not extend all the way to Wilani Drive.

The proof in this case is that the decedent owned no other property fronting Cherokee Boulevard and that the "Dan Mayo property," specifically referenced in the devise, is one of the two lots fronting Cherokee Boulevard.  As stated above, the three additional lots fronting Wilani Drive were contiguous to the rear lot lines of the two lots on

Cherokee Boulevard. It is clear that the decedent intended for the above specific devise to John Schubert to include the two lots owned by her on Cherokee Boulevard. . . .

It is well established that "[i]f the decedent is testate, real property vests immediately in the devisee named in the will unless it specifically directs that the property be part of the estate under the control of the executor." Pritchards on Wills and Administration of Estates, § 634. Tenn. Code Ann. § 31-2-103. "If the representative attempts to sell lands without authority granted by will, his conveyance is a nullity . . . [.]" Pritchards on Wills and Administration of Estates, § 634. With the finding that the two lots fronting Cherokee Boulevard are within the specific devise to John Schubert, the two lots vested immediately upon the death of the decedent in the devisee, John Schubert and outside of the administration of the estate and the control of the executor. *See* Tenn. Code Ann. § 31-2-103. It further follows that the powers granted to the executor under Article V of the will do not include the power or authority to administer the two lots fronting Cherokee Boulevard. Despite the able arguments of counsel for John Schubert, this Court is unable to conclude that the words of devise, "be given to my son, John Clinton Schubert," also constitute a power of disposition or management of the property in favor of the personal representative.

John Schubert appeals Trial Court's July 24, 2014 judgment.

### Discussion

Although not stated exactly as such, John Schubert raises two issues on appeal: 1) whether the Trial Court erred in finding that the real property described in the second paragraph of Article IV of the Will referred to the Cherokee Lots; and, 2) whether the Trial Court erred in finding that the Cherokee Lots vested in John Schubert immediately upon Deceased's death.

We first consider whether the Trial Court erred in finding that the real property described in the second paragraph of Article IV of the Will referred to the Cherokee Lots. This issue concerns the Trial Court's construction of the Will. This Court discussed the standard of review to be applied in cases involving the construction of a will in *Horadam v. Stewart* stating:

The construction of a will is a question of law for the court; therefore, we review the trial court's conclusions of law *de novo* affording

-6-

them no presumption of correctness. *In re Estate of Milam*, 181 S.W.3d 344, 353 (Tenn. Ct. App. 2005). In cases involving the construction of wills, the cardinal rule "is that the court shall seek to discover the intention of the testator, and will give effect to [that intent] unless it contravenes some rule of law or public policy." *Stickley v. Carmichael*, 850 S.W.2d 127, 132 (Tenn. 1992) (quoting *Bell v. Shannon*, 212 Tenn. 28, 367 S.W.2d 761, 766 (Tenn. 1963)); *see also In re Crowell*, 154 S.W.3d 556, 559 (Tenn. Ct. App. 2004); *McBride v. Sumrow*, 181 S.W.3d 666, 669 (Tenn. Ct. App. 2005). Furthermore, in will construction cases, we rely on the language of the instrument to determine the testator's intent:

> [T]he testator's intention must be ascertained from "that which he has written" in the will, and not from what he "may be supposed to have intended to do," and extrinsic evidence of the condition, situation and surroundings of the testator himself may be considered only as aids in the interpretation of the language used by the testator, and "the testator's intention must ultimately be determined from the language of the instrument weighed in the light of the testator's surroundings, and no proof, however conclusive in its nature, can be admitted with a view of setting up an intention not justified by the language of the writing itself."

*In re Cromwell*, 154 S.W.3d at 559 (quoting *Nichols v. Todd*, 20 Tenn. App. 564, 101 S.W.2d 486, 490 (Tenn. Ct. App. 1936)); *see also* Pritchard on Wills §§ 384, 387, 388, and 409 (2d. ed.). Our Supreme Court has said that when ascertaining the testator's intent by construing the language used in a will, we must consider the entire will as a whole. *In re Estate of Vincent*, 98 S.W.3d 146, 150 (Tenn. 2003).

*Horadam v. Stewart*, M2007-00046-COA-R3-CV, 2008 WL 4491744, at *5 (Tenn. Ct. App. Oct. 6, 2008), *Rule 11 appl. perm. appeal denied April 27, 2009*.

With regard to the issue now before us the Trial Court specifically found:

> The proof in this case is that the decedent owned no other property fronting Cherokee Boulevard and that the "Dan Mayo property," specifically referenced in the devise, is one of the two lots fronting Cherokee Boulevard. As stated above, the three additional lots fronting Wilani Drive were contiguous to the rear lot lines of the two lots on Cherokee Boulevard. It is clear that the decedent intended for the above

specific devise to John Schubert to include the two lots owned by her on Cherokee Boulevard. . . .

In his brief on appeal John Schubert argues, in part, that Deceased did not own any property at the time of her death that fit the full description of the real property contained in the second paragraph of Article IV of the Will. In short, John Schubert asserts that Deceased did not own any real property at the time of her death located on Cherokee Boulevard that ran *all the way* to Wilani Drive to the rear. He further argues that because the Will contains the phrase "running to Wilani Drive," rather than 'running toward Wilani Drive,' that the Cherokee Lots do not satisfy the description in the Will because the Cherokee Lots do not run *all the way* to Wilani Drive. This interpretation, however, strains the language used in the Will. Article IV provides that the real property "located on Cherokee Boulevard and running to Wilani Drive to the rear, . . ." includes the Dan Mayo property, which the parties agree does not and never did run from Cherokee Boulevard *all the way* to Wilani Drive.

We also must consider the language in the Will "weighed in the light of the testator's surroundings, . . .," which include the fact that Deceased already had deeded the Wilani Lots contiguous to the Cherokee Lots to John Schubert and the fact that although at the time he drafted the Will Mr. Hollow knew that Deceased had owned the Wilani Lots, he was unaware that she previously had deeded them to John Schubert. *Horadam*, 2008 WL 4491744 at *5. The end result given the proper construction of the Will as a whole coupled with the fact that Deceased previously deeded the Wilani Lots to John Schubert is that John Schubert will have received all of the property that Deceased once owned between Cherokee Boulevard and Wilani Drive. We hold, as did the Trial Court, that Deceased's intent was that the real property described in the second paragraph of Article IV of the Will referred to the Cherokee Lots.

Next, we consider whether the Trial Court erred in finding that the Cherokee Lots vested in John Schubert immediately upon Deceased's death. As pertinent, Tenn. Code Ann. § 31-2-103 provides:

> **31-2-103. Vesting of estate – Net estate. --** The real property of an intestate decedent shall vest immediately upon death of the decedent in the heirs as provided in § 31-2-104. The real property of a testate decedent vests immediately upon death in the beneficiaries named in the will, unless the will contains a specific provision directing the real property to be administered as part of the estate subject to the control of the personal representative. . . .

Tenn. Code Ann. § 31-2-103 (2007).

In the case now before us, Deceased died testate. Thus, pursuant to Tenn. Code Ann. § 31-2-103 her real property vested immediately upon her death in the beneficiaries named in the Will unless the Will contained a specific provision directing otherwise. As pertinent to this issue, the Will provides:

> It is my specific will and request that all real estate which I own or may own at the date of my death located on Cherokee Boulevard and running to Wilani Drive to the rear, including the Dan Mayo property, be given to my son, John Clinton Schubert, as part of his share of my estate.

The Will directs that the real property in question is to "be given to my son, John Clinton Schubert, as part of his share of my estate." Preceding this specific phrase the Will states: "All of the residue of my property, real, personal and mixed, of whatsoever kind and wheresoever situated, I give, devise and bequeath as follows: . . . ." The specific phrase with regard to the Cherokee Lots, however, contains only the words "be given," not the words "devise" or "bequeath." The direction that the property "be given" indicates that this property is to be administered as part of Deceased's estate and "given" to John Schubert "as part of his share of [Deceased's] estate" by the personal representative of the estate. The words "be given" without words such as "devise" or "bequeath" show that further action is necessary before the property can vest in John Schubert, especially in light of Deceased's specific direction that it be a "part of [John Schubert's] share of my estate."

The analysis that the Cherokee Lots did not vest in John Schubert immediately upon Deceased's death is further supported by Article V of the Will wherein Deceased acknowledged "that a substantial portion of her estate may include real estate and other assets which cannot be divided as easily as cash, stocks, bonds or securities, . . ." and then made it "the duty of the Executor to ensure that an equitable division has taken place . . ." and granted the executor the authority to do things to effectuate the division. Article V also provided the executor the power to liquidate Deceased's assets if necessary. Deceased acknowledged in Article V that a substantial portion of her estate may consist of real property, which the executor would be unable to liquidate "to ensure that an equitable division . . ." was achieved if the real property was not subject to the administration of the estate. Thus, Article V supports the conclusion that the real property contained in the specific bequest to John Schubert did not vest immediately in John Schubert upon Deceased's death, but instead was subject to the administration of the estate.

We hold that the Cherokee Lots did not vest in John Schubert immediately upon Deceased's death because the Will contained specific provisions directing that the real

property was to be administered as part of Deceased's estate subject to the control of the personal representative. As such, we reverse that portion of the Trial Court's judgment holding that the Cherokee Lots vested in John Schubert immediately upon Deceased's death.

## Conclusion

The judgment of the Trial Court that it was Deceased's intent that the real property description in the second paragraph of Article IV of the Will refer to the Cherokee Lots is affirmed. The judgment of the Trial Court holding that the Cherokee Lots vested in John Schubert immediately upon Deceased's death is reversed. This cause is remanded to the Trial Court for collection of the costs below. The costs on appeal are assessed one-half against the appellant, John Clinton Schubert, and his surety; and one-half against the appellee, Morgan Alexander Schubert, Jr.

_____
D. MICHAEL SWINEY, JUDGE



**Schubert Property**

KGIS - 606 Main St - Suite 150 - Knoxville, TN 37772 - www.kgis.org                    Printed: 1/18/2013 at 3:22 PM

Disclaimer: KGIS makes no representation or warranty as to the accuracy of the map and its information nor to its fitness for use. Any user of this map product accepts the same AS IS WITH ALL FAULTS, and assumes all responsibility for the use thereof, and further covenants and agrees to hold KGIS harmless from any and all damage, loss, or liability arising from any use of this map product.

FILED

NOV 0 5 2014

Clerk of the Court
Rec'd by_____



Δ π EXHIBIT ___/___

Deponent_____

Date 1/22/13 Rpt____

WWW.DEPOBOOK.COM